**Aaron FLECK, Plaintiff–Appellee,**

v.

**E.F. HUTTON GROUP, INC., and E.F. Hutton & Co., Inc., Defendants–Appellants.**

**No. 1373, Docket 89–7435.**

United States Court of Appeals, Second Circuit.

Argued June 12, 1989.

Decided Dec. 14, 1989.

**1048**

Jeffrey L. Friedman, Shearson Lehman Hutton Inc., New York City (Theodore A. Krebsbach, of counsel), for appellants.

David F. Dobbins, Patterson, Belknap, Webb & Tyler, New York City (Harman A. Grossman, of counsel), for appellee.

William J. Fitzpatrick & Gerard J. Quinn submitted a brief for amicus Securities Industry Assn.

Before OAKES, Chief Judge, and VAN GRAAFEILAND and PRATT, Circuit Judges.

OAKES, Chief Judge:

The defendants here, whom we will collectively call "Hutton," are both subsidiaries of Shearson Lehman Hutton, Inc. They appeal an order of the United States District Court for the Southern District of New York, Vincent L. Broderick, Judge, denying a motion to compel arbitration of the claims made in this suit. Plaintiff Aaron Fleck, who was employed by Hutton for twelve years, resigned or was discharged from his position in January of 1987. His suit claims that Hutton committed various torts against him after he left his job. He alleges libel, slander, portrayal in a false light, and conspiracy to commit tortious interference with prospective business relationships.

On September 11, 1987, Hutton moved to compel arbitration and to stay the litigation pending arbitration.[1] Hutton cited Rule 347 of the New York Stock Exchange ("NYSE"), which requires arbitration of disputes "arising out of the employment or termination of employment," and several other provisions of the NYSE rules and the National Association of Securities Dealers ("NASD") Code. On January 19, 1988, after receiving briefs and hearing argument, Judge Broderick denied the motion because he found our decision in *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir.1983), to be controlling, its facts indistinguishable. In *Coudert*, we held that an employee's claims of post-employment tortious conduct did not have to be arbitrated because Rule 347 did not apply to false statements that the employer made after the termination to describe the employee.

Hutton now appeals as of right under 9 U.S.C. § 15 (1988), which permits an appeal from an order refusing a stay requested under the United States Arbitration Act, 9 U.S.C. § 3 (1988). *See Fleck v. E.F. Hutton Group, Inc.*, 873 F.2d 649 (2d Cir.1989) (per curiam) (denying, in view of applicability of 9 U.S.C. § 15, motion for appeal under certification procedures, and deeming appeal timely).

We reverse. Because we reconsider *Coudert*, we have circulated this opinion to all of the active judges in the circuit before releasing it. *See* Newman, *In Banc Practice in the Second Circuit: The Virtues of Restraint*, 50 Brooklyn L.Rev. 365, 370 & n. 30 (1984) (citing *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983)).

BACKGROUND

Fleck, according to his complaint, worked for Hutton in Florida for twelve years.

1. Hutton also moved to transfer the lawsuit to the Middle District of Florida, but Judge Broderick denied that motion, and the denial is not appealed here.

His earnings averaged $600,000 to $700,000 per year, and he was one of the company's top twenty account executives nationwide for the years 1977 through 1986. He left the job in January of 1987. The complaint refers to his "termination" without saying whether he was fired, but a defense affidavit says that he was discharged.

The first count of Fleck's complaint alleges defamation. He claims that on April 27, 1987, Corey Steadman, the branch manager of Hutton's Tampa office, told one of Fleck's clients that Fleck was a disbarred lawyer, that he had lost his license in the securities business and could never get another job as a broker, and that many of Fleck's customers had complained about him to Steadman. Fleck also claims that on April 29, 1987, Steadman told another client that Fleck had been fired, that his broker's license had been permanently revoked, and that Fleck was a disbarred lawyer. Likewise, Fleck claims that on April 21 and April 28, Steadman told two other clients, among other things, that Fleck had been banned from the securities industry for cause, and that Steadman told one of them that Fleck was "basically a criminal." The complaint says that all these statements were false.

The second count of the complaint alleges that the Form U–5 that Hutton filed with the NASD in March of 1987 defamed him by falsely stating that he had been discharged for cause, that he had failed to follow firm policy, that he violated NASD rules by guaranteeing an investment, and that he was discharged because several of his clients had brought lawsuits against Hutton.

The third, fourth, and fifth counts allege that after Fleck left Hutton, Hutton induced three brokerage houses with which Fleck had negotiated, respectively, to break an employment contract, rescind an offer of employment, and terminate negotiations. The sixth count claims that in February of 1987 Hutton's branch manager in Longboat Key, Florida circulated to brokers in that office a document purporting to list fifteen lawsuits brought against Hutton by Fleck's clients. Finally, the seventh count alleges

that, as a result of the conduct described above, Hutton presented Fleck in a false light as a criminal, a disbarred lawyer, a broker with a revoked license who had been banned from the securities industry, and a defendant in many lawsuits.

In 1975 and 1980, Fleck had executed a Form U–4, a Uniform Application for Securities and Commodities Industry Representative and/or Agent. In the Form U–4 he filed in 1980, he applied for registration with the NYSE, the NASD, the American Stock Exchange, the Chicago Board of Trade, and the Chicago Board of Options Trading, and he agreed to abide by the rules of those entities.

Hutton argues that several rules require arbitration of Fleck's claims, and we set out those rules here. Application of the provisions is somewhat complicated by the fact that defendant E.F. Hutton Group, Inc. ("the Group") is not a member of the NYSE, while E.F. Hutton & Company, Inc. ("the Company") is a member.

NYSE Arbitration Rule 347, the rule we considered in *Coudert*, is entitled "Controversies as to Employment or Termination of Employment." It states, in its entirety:

> Any controversy *between a registered representative and any member* or member organization *arising out of the employment or termination of employment* of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

2 N.Y.S.E. Guide (CCH) ¶ 2347 (Sept.1988) (emphasis added). Rule 347 applies to the controversy with the Company—a NYSE member—but not to the dispute with the Group. Article XI of the NYSE Constitution also applies to the Company but not to the Group. It states:

> Any controversy between parties who are members, allied members or member organizations and any controversy *between a member*, allied member or member organization *and any other person arising out of the business of such member*, allied member or member orga-

nization, or the dissolution of a member organization, shall at the instance of any such party be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt.

Constitution of the New York Stock Exchange, Inc., Art. XI, Sec. 1, 2 N.Y.S.E. Guide (CCH) ¶ 1501 (June 1986) (emphasis added).

There are two other rules that might apply to Fleck's claim against the Group. First, NYSE Rule 600(a) states:

> Any dispute, claim or controversy *between a* customer or *non-member and a* member, allied member, member organization and/or *associated person arising in connection with the business of such* member, allied member, member organization and/or *associated person in connection with his activities as an associated person* shall be arbitrated under the Constitution and Rules of the [NYSE] as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member.

2 N.Y.S.E. Guide (CCH) ¶ 2600 (May 1988) (emphasis added). Finally, Section 8(a) of the NASD Code of Arbitration Procedure provides:

> Any dispute, claim or controversy eligible for submission under Part I of the Code *between or among* members and/or *associated persons,* and/or certain others, *arising in connection with* the business of such member(s) or in connection with *the activities of such associated person(s),* shall be arbitrated under this Code, at the instance of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member or a person associated with a member against a member; and,
>
> (3) a person associated with a member against a person associated with a member.

National Association of Securities Dealers, Inc., *Reprint of the Manual* ¶ 3708 (March 1989) (emphasis added).

## DISCUSSION

■ We began our analysis in *Coudert* by reciting a "truism" that is no less true today:

> [A]rbitration agreements are favored in the law and are to be broadly construed. An order to arbitrate should not be denied unless it can be said that the arbitration clause is not susceptible of a reasonable interpretation covering the asserted dispute. In short, doubts should be resolved in favor of coverage.

*Coudert,* 705 F.2d at 81 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The United States Arbitration Act, codified at 9 U.S.C. §§ 1–15 (1988), requires that agreements to arbitrate disputes be enforced. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987). A court considering a motion for a stay pending arbitration must determine whether the parties agreed to arbitrate and the scope of their agreement. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Without question, Fleck agreed to comply with the rules and constitutional provisions of the NYSE and the NASD by signing the U–4 application. *See Coudert,* 705 F.2d at 81.

We consider first whether Fleck's claim against the Hutton Company is arbitrable. Although appellant suggests that other provisions might require arbitration here, we start with NYSE Rule 347 because that provision, by its terms, was written to cover disputes arising out of the termination of employment. In *Coudert,* we considered Rule 347 and concluded that it did not apply to an employee's allegation that her employer falsely stated, after her resignation, that she had been fired for cause. *Id.* at 80.

Appellants, urging us not to follow *Coudert,* note that recent Supreme Court cases demonstrate an increasingly hospitable attitude toward arbitration. For example, *Rodriguez De Quijas v. Shearson/American Express, Inc.,* —— U.S. ——, ——, 109 S.Ct. 1917, 1918, 104 L.Ed.2d 526, (1989)

which overruled *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), noted that the "presumption of disfavoring arbitration proceedings" is now "outmoded." These cases, however, are not totally relevant. For example, *Rodriguez, Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and *Mitsubishi* all dealt with arbitration agreements that clearly would be binding unless more important federal policies, such as those of the securities and antitrust laws, prevented enforcement. On the other hand, here we are faced with an agreement that may not cover the dispute at all, although we need not consider other federal statutes. *Coudert* was a case about contract interpretation, and it did not rely on any presumption that arbitration would not provide fair adjudication. Therefore, the demise of that presumption should not affect our reconsideration of *Coudert*.

Appellants also imply that new legal standards for interpreting arbitration agreements have developed since we decided *Coudert*. They cite *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), for the proposition that any doubts should be resolved in favor of arbitration, but that case was decided before *Coudert*—in fact, it is cited in the dissent to *Coudert*—and we certainly accepted that proposition in *Coudert, see* 705 F.2d at 81 (citing *Steelworkers*). Appellants also cite *Mitsubishi*, 473 U.S. at 624 n. 13, 105 S.Ct. at 3352 n. 13, arguing that any allegations that "touch matters" covered by an arbitration agreement are arbitrable. This supposed "touch" standard appeared in a footnote in which the Court summarily affirmed a court of appeals' interpretation of a broad arbitration clause, and the "touch matters" language was also used in *Genesco*, 815 F.2d at 846, which concerned claims of wrongdoing related to an international sales contract. Appellants argue that the "extremely broad standards" of construction used in *Moses H. Cone, Mitsubishi*, and *Genesco* make the dispute here arbitrable. We do not see, however, how these standards are any more unrestrained than what we set out in *Coudert;* there, we asked whether the dispute "pertain[ed] to" employment or termination. 705 F.2d at 82.

We find, however, that while in *Coudert* we described the proper approach to construction of Rule 347, our application of that approach was too cramped. In *Coudert*, we framed the issue as whether the dispute "pertains to either employment or termination, or whether it simply alleges tortious conduct arising after termination," *id.*, and we held "the dispute itself does not pertain to employment or termination of employment; the tortious acts are all claimed to have occurred after such termination," *id.* Thus, we gave the timing of the alleged torts a great deal of weight. *Id.* at 81 (In general, "only grievances based on conditions arising *'during the term of the agreement to arbitrate'* are arbitrable after the term has ended.") (quoting *Procter & Gamble Indep. Union of Port Ivory v. Procter & Gamble Mfg. Co.*, 312 F.2d 181, 186 (2d Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963)); *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577, 581 n. 6 (2d Cir.1984) (*Coudert's* narrow construction of the term "arising out of" was primarily due to the torts' timing); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 194–95 (2d Cir.1984) (*Coudert's* result stemmed in part from the timing of the torts; "the temporal aspects simply reinforced the quite natural doubts about whether such a dispute was covered by the purported promise to arbitrate").

We now believe, however, that, as several courts have pointed out, the timing of the alleged torts is less significant. *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984); *see also Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1450 (9th Cir.1986) (citing *Morgan* with approval); *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106, 108–09 (6th Cir.) (same), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985); *Flanagan v. Prudential–Bache Sec., Inc.*, 67 N.Y.2d 500, 507–08, 495

N.E.2d 345, 349, 504 N.Y.S.2d 82, 86 (same), *cert. denied,* 479 U.S. 931, 107 S.Ct. 402, 93 L.Ed.2d 355 (1986).

■ Although we now hold that *Coudert,* insofar as it implied that no torts committed after employment ends are arbitrable, missed the mark, we still believe that the timing of the torts is relevant to determining whether the tort arose out of employment or its termination.[2] Fleck's claims involve his employer's statements to his clients, to prospective employers, to co-workers, and to the NYSE about Fleck. Some statement would have to be made to each of these parties whenever a broker quit or was fired. Hutton was required by NYSE rules to file a Form U–5 describing Fleck's termination, *see* Rule 345.17, and prospective employers were required to check his references, *see* Rule 345.11. Hutton's responsibility to its clients would require it to communicate with them, *see* Rule 405(2) (NYSE member must supervise accounts), and to keep its staff informed of customers' disputes with the company. We hold that Rule 347 may require the arbitration of tort claims concerning statements made after termination. In Fleck's case, the timing of the statements does not prevent arbitration, because the statements could only have been made after termination; they were made during communications required to be made by statute, rule, or common law; and they were made during communications of the sort that an employer would foreseeably make upon an employee's termination.

On the other hand, we still are not certain that all of Fleck's claims against the Company are arbitrable under Rule 347. While the fact that a statement is made after the employment has ended does not prevent arbitration, the statement's content may be such that the tort claim it provokes does not "arise out of" employment or termination. An unprovoked insult made by a former employer, for example, cannot be said to arise from employment just because the employment relationship was a "but

for" cause of the employer's dislike of the employee.

■ We therefore follow the approach of the other circuit courts that have considered this problem, and, like those courts, adopt the test that the Court of Appeals for the Eighth Circuit developed in *Morgan. Morgan* held that Rule 347 applies to tort claims that "involve significant aspects of the employment relationship." 729 F.2d at 1167. The court found that there was a "significant relationship" between the plaintiff's employment and his claims that his employer, after termination, "scrounged up" customer complaints, repeated them to enforcement agencies, and misinformed clients that the plaintiff's broker's license had been suspended, because a "primary issue" in resolving the claims would be the truth of these statements, which implicated his customers, license, and handling of accounts. *Id.* Even reading Rule 347 broadly, however, the *Morgan* court found that a charge that the employer told the plaintiff's co-workers that he stole from their desks was not arbitrable, because "[n]o customers or securities agencies [were] implicated, and no significant issue of Morgan's job performance *qua* broker [was] implicated." *Id.* at 1168.

In *Aspero,* the Court of Appeals for the Sixth Circuit cited *Morgan* with approval and held that a tort claim for post-termination conduct is arbitrable under Rule 347 if "resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship." 768 F.2d at 109. A broker's claim that her employer made false statements that she was fired for violating trading rules, therefore, was arbitrable because resolution of the claim—evaluation of the statement's falsity—depended on evaluation of the broker's performance during employment. *Id.*

The Ninth Circuit Court of Appeals in *Zolezzi* followed *Morgan* and *Aspero,* finding arbitrable claims that were "based on statements which relate to [the plaintiff's]

---

2. The district court was troubled by the question of line-drawing; Judge Broderick asked counsel for Hutton whether arbitration should be re-

quired if an employer makes derogatory comments to a former employee's clients three years after the employee changes jobs.

handling of customer accounts while employed ... and possible consequences of his actions." 789 F.2d at 1450. The statements were made by the plaintiff's former employer to a client after the plaintiff resigned from his job; the employer allegedly said that the client had reason to file a complaint against the broker, that the broker would probably be out of the stock market business within a year, that he might end up in jail, that he was immoral and unethical, and that he would eventually lose his broker's license. *Id.* at 1448–49.[3]

■ We remand to the district court with instructions to order arbitration of the claims that "involve significant aspects of the employment relationship," *Morgan,* 729 F.2d at 1167, *i.e.,* those claims for which resolution "depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship," *Aspero,* 768 F.2d at 109. We believe that the language of Rule 347 would lead a reasonable applicant to expect arbitration of claims such as these made during foreseeable post-employment communications.

■ The first count of the complaint involves statements that Fleck had lost his broker's license, was "basically a criminal," had been the subject of many customer complaints, and had been fired. Proving the truth or falsity of those statements will require the presentation of evidence integrally related to Fleck's performance as a broker, so Rule 347 requires arbitration. On the other hand, the statement that Fleck was a disbarred lawyer is not relevant to his performance except as it might bear on his integrity and, absent summary judgment, should be held for a trial after arbitration of the other claims.

The statements in the U–5 form (that Fleck was discharged for cause, and what those causes were) are clearly related to his performance, so the second count of the complaint is arbitrable. The third, fourth, and fifth counts for tortious interference do not allege what statements were made to the prospective employers. Because there is no allegation that any statements made were not performance-related, and employment references would normally involve comments as to employee performance, these claims must be considered arbitrable. The count alleging that Hutton circulated a list of lawsuits against Fleck to Fleck's co-workers also concerns his conduct as an employee. Finally, the seventh count, the false-light count, like the defamation count, involves several different claims and must be split into arbitrable and nonarbitrable parts. We find that the claim based upon the allegation that Fleck was a disbarred lawyer, absent further factual development, is nonarbitrable.

Having considered the applicability of Rule 347 to Fleck's claim against the Company, we need not consider Article XI of the NYSE Constitution or section 8(a) of the NASD code. They would require arbitration of disputes "arising out of the business" of the Company. Any statements that the Company made about Fleck that arose out of the Company's business would also meet our test for Rule 347—they would involve significant aspects of the employment relationship and depend on evaluation of a party's performance as a broker or employer. *See Morgan,* 729 F.2d at 1165 n. 3 (holding that scope of Rule 347 was similar in all relevant respects to that of predecessor to NYSE Constitution Article XI).

---

3. *See also Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 832–33 (D.C.Cir.1987) (interpreting a brokerage employee's agreement to arbitrate disputes "arising out of my employment" as covering "claims deriving in some fashion from the occupational duties," including this claim involving statements about the employee's responsibility for wire and mail fraud charges, and citing *Morgan* and *Aspero*); *Feinberg v. Oppenheimer & Co.,* 658 F.Supp. 892, 893 (S.D.N.Y.1987) (employer's statement that employee was fired for failure to cooperate in defense of lawsuit was "integrally linked to plaintiff's employment," and defamation claim was arbitrable, apparently under Rule 347); *McMahon v. RMS Electronics, Inc.,* 618 F.Supp. 189 (S.D.N.Y. 1985) (interpreting an agreement to arbitrate claims "arising in connection with" an employment contract to cover statements about the employee's termination but not an employer's statement to a fellow employee that the plaintiff was the "company drunk"); *Flanagan* (requiring, under Rule 347, arbitration of statements that employees were "on the road again," implying that they were unreliable drifters, and had lawsuits pending against them that concerned their professional conduct).

■ We must now determine whether Fleck's claims against the Hutton Group are arbitrable. Because the Group is not a NYSE member, Rule 347 does not apply to it. Appellants argue that NYSE Rule 600(a) requires that Fleck arbitrate his dispute with the Group.[4] Fleck was clearly an "associated person" within the meaning of Rule 600(a). *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C.Cir. 1987) (citing the definition in the Securities Exchange Act of 1934); 15 U.S.C. §§ 78c(a)(18), 78c(a)(21) (1982) (defining a person associated with a member as, inter alia, an officer, director, branch manager, or employee of a broker or dealer that is a member). To be arbitrable, Fleck's claims must have arisen "in connection with [his] business [or] in connection with his activities as an associated person." Rule 600(a). We hold that the dispute with the Group is arbitrable to the same extent as the dispute with the Company; matters that arose in connection with Fleck's activities as an associated person would also arise in connection with his employment under Rule 347. *See Pearce* (allowing defendant, the Hutton Group, to use Rule 600(a) to arbitrate an ex-employee's claim that he was defamed by statements made about his activities as an associated person); *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577 (2d Cir.1984) (refusing to let defendant, who was not a NYSE member, arbitrate a non-exchange related fraud claim under Rule 600(a)).

Reversed and remanded with instructions to the district court to order arbitration in accordance with the foregoing.

---

**4.** Appellants also argue that NASD Code of Arbitration Procedure section 8(a) requires arbitration. That provision would only apply if both Fleck and the Group are "person[s] associated with a member" under that section. There is debate over whether a corporate entity can be a person under this section. Fleck argues that NASD Bylaws Article I(m), *printed in* National Association of Securities Dealers, Inc., *Reprint of the Manual* ¶ 1101 (March 1989), which defines associated persons as natural persons, would apply. Hutton would apply the Securities Exchange Act definition, 15 U.S.C. § 78C(a)(21) (1982), which is not limited to natural persons.

In any case, to be arbitrable, the dispute would have to arise "in connection with the activities of such associated person." We do not believe that the result of section 8(a), if it applied here, would be a result different from that under Rule 600(a).