Leo HAVILAND, Plaintiff,

v.

GOLDMAN, SACHS & CO. and J. Aron
& Co., Defendants.

No. 89 CIV. 8463 (LBS).

United States District Court,
S.D. New York.

May 8, 1990.

Jay Goldberg, P.C., New York City (Jay Goldberg and Michael G. Berger, of counsel) and Judd Burstein, P.C., New York City (Judd Burstein, of counsel), for plaintiff.

Sullivan & Cromwell, New York City (Gandolfo V. DiBlasi and Theodore O. Rogers, Jr., of counsel), for defendants.

### OPINION

SAND, District Judge.

Plaintiff Leo Haviland brings suit against his former employer Goldman, Sachs & Co. ("Goldman") and its affiliate J. Aron & Co. ("Aron") alleging injury caused by a pattern of racketeering activity that included mail fraud, wire fraud and attempted extortion. The defendants now seek an order pursuant to section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, staying these judicial proceedings pending the completion of arbitration. We grant the motion to stay the claims asserted against defendant Goldman and deny the motion to stay the claims asserted against defendant Aron.

### BACKGROUND

Leo Haviland joined Goldman in 1979 and worked as a vice president in Goldman's Energy Futures and Options Group during the relevant time period and until his termination in February 1989. Haviland earned commissions for Goldman by trading energy futures and options on energy futures on behalf of large refining and marketing firms, energy producers, and oil trading companies. These trades were executed predominantly on the International Petroleum Exchange in London; none of these

trades were executed on the New York Stock Exchange ("NYSE").

Haviland's claims involve the alleged conflicting interests of Goldman's Energy Futures and Options Group and defendant Aron, a partnership consisting of all Goldman partners. In 1984, Aron began trading as a principal in the energy futures, options, forwards and physical delivery markets. Haviland alleges that the confidential information he acquired from his clients about their future trading plans was tremendously valuable to Aron. For example, if Aron knew that one of Haviland's clients intended to purchase a substantial amount of oil, Aron could attempt to enter the market in advance of Haviland's client and profit from that information.

Haviland asserts that from April, 1984 to Spring, 1987, Goldman made explicit, but false, promises that it would erect a "Chinese Wall" so that Aron would not obtain any confidential customer information from Haviland's group. Then, from July, 1987 to January, 1989, both Goldman and Aron allegedly attempted to extort Haviland into divulging confidential client information to Aron. Haviland claims that he was denied appropriate salary increases and eventually summarily dismissed because he refused to divulge the requested information. In his complaint, Haviland asserts claims against both Goldman and Aron for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d), and common law fraud.

The parties do not dispute that in September 1981, Haviland executed a Form U–4, captioned "Uniform Application for Securities Industry Registration" ("U–4"). Paragraph 5 on page 4 of the U–4 states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8.

Affidavit of Robert J. Katz, Exhibit A. In response to Question 8, Haviland applied for registration with the NYSE, the American Stock Exchange and the National Association of Securities Dealers.

The parties also do not dispute that Haviland is a registered representative of the NYSE, that defendant Goldman is a member organization of the NYSE and that defendant Aron is not a member. Different NYSE rules apply to controversies involving member organizations of the NYSE and to controversies involving non-members. NYSE Arbitration Rule 347, which might apply to Haviland's claims against Goldman, states:

> Any controversy *between a registered representative and any* member or *member organization arising out of the employment or termination of employment* of such registered representative by and with such member or member organization shall be settled by arbitration, at the insistence of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

2 N.Y.S.E. Guide (CCH) ¶ 2347 (Sept. 1988) (emphasis added). NYSE Rule 600(a), which might apply to Haviland's claims against Aron, states:

> Any dispute, claim or controversy *between a* customer or *non-member and a* member, allied member, member organization and/or *associated person arising in connection with the business of such* member, allied member, member organization and/or *associated person in connection with his activities as an associated person* shall be arbitrated under the Constitution and Rules of the [NYSE] as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member.

2 N.Y.S.E. Guide (CCH) ¶ 2600 (May 1988) (emphasis added). Haviland is clearly an associated person within the meaning of Rule 600(a). *See Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1054 (2d Cir. 1989) (citing the definition in the Securities Exchange Act of 1934); 15 U.S.C. §§ 78c(a)(18), 78c(a)(21) (1982) (including an employee of a member in the definition of a person associated with a member).

Haviland argues that although he was a registered representative with the NYSE, he never acted in that capacity and never executed any trades on the NYSE. Haviland claims that he could have performed his job and traded on various commodities exchanges even if he had not registered with the NYSE and even if Goldman were not a NYSE member organization. *See* Affidavit of Leo Haviland. The defendants respond that even if registration were not required by the NYSE, Goldman required as a policy matter that all employees in Haviland's position complete such registration. *See* Reply Affidavit of David B. Ford. Haviland retorts that Goldman did not enforce that policy, noting that other members of his group were not so registered.

For the purposes of this motion, we need not resolve the parties' dispute over the bona fide nature of Goldman's policy requiring registration with the NYSE. Haviland does not claim that his decision to execute the U–4 was involuntary,[1] and the parties do not dispute that Haviland could have performed exactly the same job without executing that written agreement. The issue before this Court is whether Haviland's claims against Goldman and Aron fall within the scope of the written arbitration rules of the NYSE.

## DISCUSSION

■ By signing the U–4 application, Haviland voluntarily agreed to comply with the rules of the NYSE. Arbitration agreements are contractual obligations which are governed by general principles of contract interpretation. The federal policy supporting arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *see also Fleck*, 891 F.2d at 1050.

■ We first consider defendant Goldman's motion. Other courts have liberally construed the requirement of NYSE Rule 347 that the claims asserted must "aris[e] out of the employment or termination of employment." *See Fleck*, 891 F.2d at 1053 (NYSE Rule 347 requires arbitration of tort claims that "involve significant aspects of the employment relationship" even where the torts are committed after termination of employment; modifying *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir.1983); *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106 (6th Cir.) (tort claim arising after employment is arbitrable under NYSE Rule 347 if "resolution of the claim depends upon evaluation of a party's performance either as a broker or an employer of brokers during the time of the contractual relationship"), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984) ("[T]he language 'arising out of' contained in Rule 347 requires arbitration of tort as well as contract claims which involve significant aspects of the employment relationship ..."); *see also Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447 (9th Cir.1986); *Henderson v. Tucker, Anthony and RL Day*, 721 F.Supp. 24 (D.R.I. 1989); *Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 281–82 (S.D.N.Y. 1988).

In *McGinnis v. E.F. Hutton & Co., Inc.*, 812 F.2d 1011 (6th Cir.), *cert. denied*, 484 U.S. 824, 108 S.Ct. 87, 98 L.Ed.2d 49 (1987), the plaintiff executed a U–4 and registered with the NYSE, but was employed at the time of her termination as an operations manager, not as a broker. In her complaint, the plaintiff asserted various common law contract and tort claims against her former employer and alleged that she was discharged for her refusal to participate in unlawful activity related to an audit. The Sixth Circuit held that even though the plaintiff was not a broker and the dispute did not relate to stock exchange

---

1. After oral argument, the defendants' attorney mailed to the Court a copy of an opinion in *Roe v. Kidder, Peabody & Co., Inc.*, 88 Civ. 8501, 1990 WL 52200 (S.D.N.Y. April 18, 1990). We find that case inapplicable because Haviland does not claim that he was fraudulently induced into executing the U–4.

business, NYSE Rule 347 required that she submit her claims to arbitration.

We agree with the Sixth Circuit's broad interpretation of the scope of NYSE Rule 347. It is clear that Haviland is a registered representative and that his claims against Goldman do "aris[e] out of" his employment and termination of employment with a member organization of the NYSE. The plain language of Haviland's written agreement does not require that Haviland's employment duties directly involve the NYSE or that his claims relate to NYSE activity. The torts alleged were committed while Haviland worked for Goldman and do involve "significant aspects of the employment relationship." We therefore grant Goldman's motion for a stay of these judicial proceedings pending arbitration.

■ We next consider defendant Aron's motion. NYSE Rule 600(a), not NYSE Rule 347, applies to claims asserted by Haviland, an associated person, against Aron, a non-member, and limits the scope of arbitrable issues to claims arising "in connection with [Haviland's] business ... [or] in connection with [Haviland's] activities as an associated person." The Second Circuit held in *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577, 580 (2d Cir.1984), that "[t]he arbitration provisions found in the NYSE Constitution and Rules governing member/non-member controversies should be limited, at least in cases such as the instant one in which the alleged improper conduct is on the part of the non-member, to controversies arising out of the member's exchange-related business." Otherwise, the court reasoned, the NYSE rules "would require every exchange member, at the insistence of a non-member, to submit to exchange arbitration every dispute it has with any entity in the world, no matter what the subject matter." *Id.; see also Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826 (D.C.Cir.1987) (applying the "exchange-relatedness" test of *Paine, Webber*,

but not deciding whether NYSE Rule 600(a) requires such limitation).

We note that the alleged improper conduct in this case, as in *Paine, Webber*, is on part of the non-member.[2] We must decide, therefore, whether Haviland's claims against Aron arise out of Haviland's exchange-related business. The predicate RICO acts and common law fraud alleged involve Haviland's activities trading energy commodities on exchanges other than the NYSE, and Aron concedes that Haviland could perform the same activities without registering with the NYSE. Despite the federal policy favoring arbitration, to require arbitration of these claims would extend the parties' arbitration agreement beyond any reasonable understanding of their intentions. We find that Haviland's claims here do not relate to any exchange-related business. *Compare Pearce*, 828 F.2d at 831–32 (allegedly improper cash management practices by branch office manager are exchange-related) *with Paine, Webber*, 728 F.2d at 581 (credit inquiry and extension of credit prior to securities transactions not involving the NYSE are not exchange-related activities).

Aron argues that the Second Circuit in *Fleck* held that the scope of NYSE Rule 600(a) is identical to the scope of NYSE Rule 347. Aron's argument is based on a single sentence in *Fleck:* "[w]e hold that the dispute with the Group [a non-member] is arbitrable to the same extent as the dispute with the Company [a member]; matters that arose in connection with Fleck's activities as an associated person would also arise in connection with his employment under Rule 347." *Fleck*, 891 F.2d at 1054. We believe that the context of the Second Circuit's decision makes it clear that rather than stating a general rule about the scope of Rule 600(a), the court's holding quoted above referred only to the facts in that case where the exchange-relatedness of the conduct was not at issue. The plaintiff in *Fleck* asserted tort claims against the defendants for statements concerning the reasons for the plaintiff's termination of employment. The

---

**2.** No claim is made by Aron that its membership and activities are so closely tied to those of the NYSE member Goldman that it can avail itself

of the arbitration provisions relating to Goldman. We render no opinion on the validity of such a claim were it advanced.

plaintiff had been employed by the defendants as a broker, and the statements at issue related to his character and performance as a broker. We do not construe the court's holding in *Fleck* as a universal proposition that all matters that arise in connection with employment activities necessarily arise in connection with exchange-related activities. Indeed, the facts of this case provide an example where conduct may be related to employment, but not involve exchange-related activity. While the court in *Fleck* did not explicitly apply the exchange-related test of *Paine, Webber,* it cited *Paine, Webber* with approval and implicitly concluded that Fleck's activities were exchange-related.

### CONCLUSION

We grant defendant Goldman's motion to stay these judicial proceedings pending arbitration and deny defendant Aron's motion for a similar stay. At oral argument, Haviland's counsel stated that if the Court reached this holding, Haviland would voluntarily discontinue his claims against Goldman. The parties are directed to submit to the Court in writing by May 21, 1990 a proposed discovery cut-off date for the claims against Aron.

SO ORDERED.