GIDATEX, S.R.L., Plaintiff,

v.

CAMPANIELLO IMPORTS, LTD., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc., Defendants.

No. 97 Civ. 9518(SAS).

United States District Court, S.D. New York.

June 10, 1998.

Thomas G. Bailey, Jr., Carole E. Klinger, Whitman Breed Abbott & Morgan LLP, New York City, for Plaintiff.

Nathan Lewin, Cynthia Thomas Calvert, Timothy J. Preso, Miller, Cassidy, Larroca & Lewin, LLP, Washington, DC, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Gidatex, S.r.L. ("Gidatex") filed a Complaint on December 30, 1997, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law trademark infringement, and common law unfair competition. Defendants Campaniello Imports, Ltd., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc. (collectively "Campaniello" or "defendant"), in turn, asserted counterclaims for breach of contract, unfair competition, misappropriation, and unjust enrichment. Campaniello now moves for a preliminary injunction and Gidatex moves to dismiss all of defendant's counterclaims. For the reasons stated below, Gidatex's motion to dismiss is granted in part and denied in part and Campaniello's motion for a preliminary injunction is denied.

### I. Introduction

The following facts are assumed to be true for purposes of the instant motions. In 1974, Campaniello agreed to become the exclusive United States distributor for Fratelli Saporiti Industria Arredamenti, S.n.c., an Italian furniture manufacturer.[1] Amended Answer and Counterclaim at pp. 5–6. Under the exclusive distributorship agreement, Campaniello was required to publicize the "Saporiti" name and trademark, first as "Fratelli Saporiti" and in later years as "Saporiti Italia." Id. at p. 6. Until July 1993, Campaniello's showrooms were exclusively devoted to the display and sale of Saporiti furniture. Id. at p. 8.

#### A. The Gidatex Agreement

In March 1994, Campaniello commenced an action in this Court against Saporiti and its owners (collectively, the "Saporiti defendants"), for breach of contract, fraud, and

misrepresentation (the "1994 Litigation"). Id. at pp. 10–11. In April 1994, Saporiti applied to the Tribunal of Busto Arsizio for protection under the Italian law known as "Concordato Preventivo," which permits the restructuring of debts in a fashion similar to Chapter 11 of the United States bankruptcy laws. Id. at p. 11. On May 8, 1994, the Italian court authorized Gidatex to lease Saporiti's assets for ten months, with an option to purchase the assets at a later date. Id.

On June 14, 1994, Gidatex and Campaniello entered into a nine-month exclusive distributorship agreement (the "Gidatex Agreement"), which replaced the previous distributor contract between Saporiti and Campaniello. Id. at 11–14. As part of the agreement, Campaniello agreed to withdraw the 1994 Litigation against the Saporiti defendants. Id. In return, Gidatex engaged Campaniello as the exclusive distributor of Saporiti Italia furniture in the United States and other Western Hemisphere countries through March 31, 1995, with an automatic five-year extension if Gidatex purchased Saporiti's assets. Id. at 11, 14. In a July 7, 1994 amendment to the Gidatex Agreement, the parties agreed to an arbitration-in-Italy clause, which provides as follows:

> Italian law will be the applicable law. Any dispute which might arise between the parties in relation to that which is the object of the present agreements shall be resolved by irritual arbitration before a panel of friendly compositors composed of Avv.ti Amedo Travi and Sergio Fabrizi and by a third arbitrator who will act as President, appointed by the two arbitrators previously named, or in the event that they cannot agree, by the President of the Tribunal of Busto Arsizio.

Amendment to the Gidatex Agreement, dated July 7, 1994, at ¶ 4.

#### B. Termination of the Gidatex Agreement

On April 10, 1995, Gidatex verbally terminated the Gidatex Agreement, claiming that Campaniello had not satisfied certain of its

---

1. In 1982, Fratelli Saporiti adopted "Saporiti Italia" (hereinafter "Saporiti") as its new corporate name.

obligations under the contract. *Id.* at 16. Gidatex subsequently refused to fill Campaniello's orders for Saporiti Italia furniture. *Id.* During and after April 1995, Campaniello sought other sources of Italian furniture and placed advertisements under its own name. *Id.* at 17. However, Campaniello still possessed a large stock of Saporiti Italia furniture that it had previously purchased. *Id.* As a result, Campaniello has continued to use the Saporiti Italia name in connection with its sale of this "leftover" Saporiti Italia furniture. *Id.*

According to Campaniello, Gidatex plans to authorize at least four other companies to sell Saporiti Italia furniture, which will be located very near existing Campaniello showrooms in New York City, Dania, Florida, Dallas, Texas, and Washington, D.C. *Id.* at 18. Gidatex will grant these new distributorships the right to use the Saporiti Italia name and will supply them with the same type of furniture that is in Campaniello's existing Saporiti furniture stock. *Id.*

### C. *Prior Litigation*

On October 16, 1995, Campaniello filed an action in this Court against Saporiti and its owners, and Gidatex and its principal officer and shareholder. In that action, Campaniello asserted claims for unjust enrichment, fraud, and misrepresentation, alleging that the defendants had (1) deceived and defrauded Campaniello in order to induce it to agree to settle, withdraw its complaint, and execute a settlement agreement outside the scope of the Concordato proceedings; (2) pretextually terminated Campaniello's exclusive agency provided for by the Gidatex Agreement; and (3) wrongfully captured the valuable good will in Campaniello's territories that Campaniello had created through its best efforts and investments. *See Campaniello Imports, Ltd. v. Saporiti Italia S.P.A,* 95 Civ. 7685, 1996 WL 437907, at *3 (S.D.N.Y. Aug.2, 1996) (*Campaniello I* ).

On August 2, 1996, the district court dismissed all of Campaniello's claims against Gidatex under section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, because the claims were subject to mandatory arbitration under the Gidatex Agreement. *See*

*id.* at *7–9. The Second Circuit affirmed this decision on April 7, 1997. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655 (2d Cir.1997).

## II. Discussion

### A. *Res Judicata*

Gidatex contends that, in light of the decision in *Campaniello I,* defendant's counterclaims are barred by res judicata. The question of whether federal or state rules of res judicata determine the effect of a federal court judgment rendered in a diversity action on a subsequent diversity action remains unresolved. *See Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997). I need not decide this issue, however, because both federal and New York principles of res judicata produce the same result here. The res judicata law of both jurisdictions provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (quotations omitted) (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Res judicata does not apply to a judgment that is not rendered on the merits, *see Denton v. Hernandez,* 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 644–45 (2d Cir.1998), or where the "initial forum did not have the power to award the full measure of relief sought in the later litigation." *Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 265 (2d Cir.1997) (citation and quotations omitted).

In *Campaniello I,* the court dismissed Campaniello's claims alleging unjust enrichment, fraud, and misrepresentation, holding that those claims were subject to mandatory arbitration in Italy pursuant to the Gidatex Agreement. The court thus determined only that it lacked power to decide Campaniello's claims and did not decide the merits of those claims. Accordingly, the rule of res judicata does not bar Campaniello from now asserting claims concerning the same subject matter. *See Neuman v. Harmon,* 965 F.Supp. 503, 508 (S.D.N.Y.1997) (res judicata does not bar

claims where earlier proceeding determined only whether action was arbitrable).

## B. *Mandatory Arbitration Under the Gidatex Agreement*

Gidatex also argues that Campaniello's counterclaims should be dismissed because they are subject to mandatory arbitration. Campaniello concedes that its breach of contract claim falls within the scope of the Gidatex Agreement's arbitration clause, but contends that its other counterclaims do not.

### 1. *Scope of The Arbitration Agreement*

■ Given the strong federal policy favoring arbitration as an alternative means of dispute resolution, a court must "construe arbitration clauses as broadly as possible, resolving any doubts concerning the scope of arbitrable issues in favor of arbitration." *Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir.1998) (citation and quotations omitted). A broadly-worded arbitration agreement "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Id.* at 76 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997)).

■ In determining whether a particular claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987). "If these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (citing *Mitsubisi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624–25 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

Applying this standard in *Campaniello*, the Second Circuit held that Campaniello's claims were covered by the arbitration agreement:

> [Campaniello's claims] essentially involve claims that appellees sought fraudulently to violate and terminate the Gidatex Agreement; clearly these claims touch matters involved in the agreement. Similarly, the [claim for unjust enrichment] alleges that Gidatex received "unjust" benefits through "repudiation and termination of plaintiffs' agency agreement." . . . . This claim is naturally dependent on [Campaniello's] rights under the Gidatex Agreement and also touches matters covered by the Gidatex Agreement; thus, the unjust enrichment claim is also subject to mandatory arbitration.

*Campaniello*, 117 F.3d at 668. Campaniello urges that its instant unfair competition, misappropriation, and unjust enrichment counterclaims are distinguishable from its claims in *Campaniello* because (1) the events on which these counterclaims are based took place *after* the termination of the license agreement, and (2) the counterclaims can be decided without reference to the provisions of the Gidatex Agreement. Campaniello reads the arbitration clause too narrowly.

In *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047 (2d Cir.1989), the court held that claims may be subject to binding arbitration though they concern conduct which occurred after the termination of the contract containing the relevant arbitration provision. There, plaintiff sued his former employer, E.F. Hutton, for libel, slander, portrayal in a false light, and conspiracy to commit tortious interference with prospective business relationships. Plaintiff alleged that after he had been terminated, E.F. Hutton's employees made various false statements, including that plaintiff had engaged in misconduct while employed by Hutton. E.F. Hutton argued that plaintiff's claims concerned the subject matter of his employment contract and were thus arbitrable pursuant to a rule of the New York Stock Exchange, which provided that controversies between a registered representative of the stock exchange (i.e., plaintiff) and a member organization (i.e., E.F.Hutton) "arising out of the employment or termination of employment of such registered representative ... shall be settled by arbitration." *Id.* at 1049.

Applying the expansive rule of arbitration clause interpretation, the court held that many of plaintiff's claims were arbitrable—

including those averring that defendants had told plaintiff's former customers that he had lost his broker's license, that he was "basically a criminal," and that he had been the subject of many customer complaints—because proving the statements' truth or falsity would require the "presentation of evidence integrally related to [plaintiff's] performance as a broker." Accordingly, claims which concerned the subject matter of plaintiff's employment were deemed arbitrable, though they arose post-employment and could be resolved without reference to the language of the employment agreement.

■ An examination of Campaniello's pleadings reveals that the nexus between its counterclaims and the parties' prior contractual relationship is at least as close as was the case in *Fleck.* In its counterclaims for unfair competition and misappropriation, Campaniello avers that "Gidatex endeavors to capture the good will, reputation, and markets created by Campaniello over a period of more than twenty years," by establishing distributorships of Saporiti Italia furniture in the United States near Campaniello's existing showrooms. Amended Answer and Counterclaim at pp. 21–22. Because Campaniello seeks to protect the goodwill which it allegedly developed while operating as the exclusive distributor of Saporiti furniture, its unfair competition and misappropriation counterclaims plainly touch on matters that are covered by the Gidatex Agreement.

Though Campaniello's counterclaims also concern its use of the Saporiti trademark after the Gidatex Agreement had been terminated, they are nonetheless subject to binding arbitration. Campaniello claims that it has continued to promote the trademark in connection with the sale of its remaining inventory of Saporiti furniture. Amended Answer and Counterclaim at p. 17. Whether Campaniello—rather than Gidatex—is entitled to any goodwill created by the sale of furniture which had been acquired pursuant to the Gidatex Agreement relates to matters covered by the agreement. The entirety of Campaniello's unfair competition and misappropriation counterclaims are, therefore, arbitrable.

■ Defendant's unjust enrichment counterclaim is arbitrable as well. The gravamen of this counterclaim is that "Gidatex's repudiation and termination of Campaniello's agency and planned creation of new distributorships" has resulted and will result in Gidatex unjustly receiving a benefit for Campaniello's twenty years of promoting the Saporiti Italia trademark and trade name. Amended Answer and Counterclaims at pp. 22–23. The only material difference between this counterclaim and the unjust enrichment claim deemed arbitrable in *Campaniello I* is the additional averment that since April 1995, Gidatex has abandoned the Saporiti Italia trademark in the Americas and the Caribbean and Campaniello has been fully responsible for maintaining the goodwill associated with the trademark during this period. *See id.* As discussed earlier, Campaniello has used the trademark while selling the "holdover" Saporiti furniture which it had acquired pursuant to the Gidatex Agreement. Thus, Campaniello's misappropriation counterclaim also touches on matters covered by that agreement.

### 2. *Waiver*

Campaniello contends that even if its counterclaims are arbitrable, Gidatex has waived its right to arbitration by pursuing its own claims in this Court, rather than through arbitration. This argument depends, in part, on whether Gidatex's claims are themselves subject to the Gidatex Agreement's arbitration provision.

### a) *The Arbitrability of Gidatex's Claims*

■ Gidatex asserts common law and Lanham Act claims for trademark infringement and unfair competition. These claims concern Campaniello's use of the Saporiti Italia trademark following Gidatex's termination of the exclusive dealership agreement. Hence, the issue presented by Gidatex's claims—to what extent, if at all, Campaniello is entitled to use the Saporiti Italia trademark in disposing of the furniture acquired under the licensing agreement—touches on matters covered by the Gidatex Agreement. *See American Diagnostica of Connecticut Inc. v. Centerchem, Inc.,* 94 Civ. 7047, 1996 WL 71494, at *3 (S.D.N.Y. Feb.20, 1996)

(defendant's trademark infringement claims against former distributor who continued to sell product after expiration of distribution agreement was subject to the agreement's arbitration provision); *see also* Gidatex's Reply Memorandum in Support of Its Motion for Preliminary Injunction at 6 (any rights which Campaniello may have acquired during the "holdover period" arose from the Gidatex Agreement). Consequently, Gidatex's trademark infringement claims are subject to the arbitration clause of the Gidatex Agreement.[2] The issue, then, is whether Gidatex waived its right to arbitrate Campaniello's counterclaims by pursuing its arbitrable claims before this Court.

### b) *The Effect of Gidatex's Choice of Forum*

In light of the strong federal policy favoring arbitration as an alternative means of dispute resolution, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir.1997) (internal quotations omitted). Nonetheless, a party may waive its right to arbitrate when it "engages in protracted litigation that prejudices the opposing party." *Id.; accord Sweater Bee By Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 461 (2d Cir.1985) ("[L]itigation of substantial issues going to the merits may constitute a waiver of arbitration"). "The prejudice that supports a finding of waiver can be substantive prejudice to the legal position of the party opposing the arbitration, such as when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or obtains information

through discovery procedures not available in arbitration." *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126 (2d Cir.1997) (citations and quotations omitted). A party may also be prejudiced by the "unnecessary delay or expense" resulting from an opponent's delay in invoking its right to arbitration. *Id.*

Courts must be reluctant to find waiver where the arbitrable claims at issue are unrelated to the claims asserted in court. A contrary approach would "effectively abrogate an arbitration clause once a party had litigated any issue relating to the underlying contract containing the arbitration clause," *id.* at 133, in contravention of the federal policy favoring the enforcement of arbitration agreements. For this reason, a plaintiff asserting an arbitrable claim in federal court waives his right to demand arbitration of an adversary's counterclaims only if the parties' claims present the "same legal and factual issues." *Id.* (franchisor, who brought eviction claim, did not waive right to arbitrate franchisee's claims alleging violation of franchise agreements and challenging validity of agreements); *accord Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 330–32 (7th Cir.1995) (franchisor who brought unlawful detainer action against its franchisee did not waive its right to arbitrate claims brought by the franchisee, including breach of contract, failure to pay royalties and advertising fees, and several Lanham Act claims, because the two suits "involved different issues"); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 389–90 (1st Cir.1993) (plaintiff did not waive right to arbitrate defendant's counterclaims that were separate and distinct from claims in the complaint). It must therefore be determined which, if any, of Campaniello's

---

**2.** Gidatex baldly asserts that Lanham Act claims cannot be submitted to arbitration. Federal statutory claims are subject to arbitration unless Congress manifests an intent to the contrary. *See Oldroyd*, 134 F.3d at 77–78; *cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (ADEA claims are arbitrable); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 119–20 (2d Cir. 1991) (ERISA claims); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 851 (2d Cir.1987) (international RICO claims). The burden of showing such an intent lies with the party opposing arbitration. *Oldroyd*, 134 F.3d at 78; *Genesco*, 815

F.2d at 849. Because Gidatex has made no such showing, its Lanham Act claims are assumed to be arbitrable. *Accord Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir.1995) (Lanham Act claims are subject to arbitration); *American Diagnostica of Connecticut Inc. v. Centerchem, Inc.*, 94 Civ. 7047, 1996 WL 71494, at *2 (S.D.N.Y. Feb.20, 1996) (assuming the arbitrability of trademark disputes); *Givenchy S.A. v. William Stuart Indus. (Far East) Ltd.*, 85 Civ. 9911, 1986 WL 3358, at *3 (S.D.N.Y. Mar.10, 1986) (federal trademark disputes are arbitrable); *Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F.Supp. 125, 131 (S.D.N.Y.1981) (same).

counterclaims present the "same legal and factual issues" as Gidatex's claims.

### i) Campaniello's Unfair Competition, Misappropriation, and Unjust Enrichment Counterclaims

■ Gidatex's trademark infringement and unfair competition claims concern Campaniello's use of the Saporiti Italia trademark after the termination of the Gidatex Agreement. These claims allege that Campaniello is using the Saporiti Italia trademark as a means of competing against Gidatex's new distributorships in the "professional furnishings business." Complaint at ¶ 18. Campaniello's unfair competition, misappropriation, and unjust enrichment counterclaims also concern the use of the Saporiti Italia trademark in the course of competition in the market for high-end contemporary Italian furniture. See Amended Answer and Counterclaim at p. 21. Moreover, both parties' claims may require a determination of whether Campaniello's promotion of the Saporiti Italia trademark following the termination of the Gidatex Agreement restricts Gidatex's use of the mark in the United States. Therefore, Gidatex's trademark infringement and unfair competition claims and Campaniello's unfair competition, misappropriation, and unjust enrichment counterclaims raise many of the same legal and factual issues.

Campaniello would be prejudiced if it were required to submit these claims to binding arbitration in Italy while Gidatex proceeds with its closely-related claims in this Court—thus reaping the advantage of the federal courts' rules governing discovery. Compare, e.g., International Council for Commercial Arbitration, International Handbook on Commercial Arbitration; Italy 27–28 (Albert Jan Van Den Berg, ed.1984) (absent agreement of parties or permission of arbitrators, Italian law prohibits parties from directly questioning witnesses), with Fed.R.Civ.P. 30–33 (allowing direct questioning by parties). Accordingly, Gidatex's decision to pursue its own claims in this Court constitutes a waiver of its right to compel arbitration of Campaniello's closely related unfair competition, misappropriation, and unjust enrichment counterclaims.

### ii) Campaniello's Breach of Contract Counterclaim

■ The factual and legal issues raised by Campaniello's breach of contract counterclaim are distinct from those raised by Gidatex's claims. In contrast to Gidatex's claims, which concern the parties' conduct after their contractual relationship had ended, Campaniello's breach of contract counterclaim involves Gidatex's conduct prior to the termination of the Gidatex Agreement. Moreover, Campaniello's breach of contract counterclaim must be decided pursuant to Italian law, while Gidatex's claims are governed by United States trademark law and New York state common law. Because Campaniello's breach of contract counterclaim presents different legal and factual issues than Gidatex's claims, Gidatex has not waived its right to compel arbitration of this counterclaim. Consequently, Gidatex may enforce the arbitration provision of the Gidatex Agreement against Campaniello's breach of contract claim.

### 3. Overview of the Arbitrability of Campaniello's Counterclaims

In summary, the arbitration clause of the Gidatex Agreement applies to all of Campaniello's counterclaims. However, by asserting its instant claims in this Court, Gidatex waived its right to compel arbitration of Campaniello's unfair competition, misappropriation, and unjust enrichment counterclaims. As a result, this Court has jurisdiction to decide the merits of these counterclaims. In contrast, Gidatex did not waive its right to arbitrate Campaniello's breach of contract counterclaim, which is therefore dismissed with prejudice pursuant to § 3 of the FAA.

### C. Gidatex's Motion to Dismiss for Failure to State a Claim for Relief

Finally, Gidatex challenges the merits of Campaniello's unfair competition and misappropriation counterclaims, pursuant to Rule 12(b)(6).

### 1. Standard of Review Under Rule 12(b)(6)

In considering a 12(b)(6) motion to dismiss, a district court must accept as true all mate-

rial facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). Furthermore, a 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted).

2. *The Merits of Campaniello's Unfair Competition and Misappropriation Counterclaims*

Campaniello's unfair competition and misappropriation counterclaims are both premised on the same averment—that Gidatex intends to establish four distributorships of Saporiti Italia furniture near Campaniello's existing showrooms in the United States, which will capture the good will, reputation, and markets created by Campaniello over a period of more than twenty years. Amended Answer and Counterclaims at p. 21. Campaniello's ambiguously-worded counterclaims are somewhat clarified in its Memorandum of Law which explains that "Campaniello does not seek ownership of the Saporiti Italia mark by virtue of its former license. Rather, it is seeking to protect [1] the goodwill it created in its own business both during and after the license, as well as [2] the goodwill it created in the mark during and after the termination of the license." Campaniello's Memorandum in Opposition to Gidatex's Motion to Dismiss ("Def's Mem.") at 11.

With respect to the claim concerning goodwill in its own business, Campaniello principally asserts that (1) its efforts are responsible for existing consumer interest in high-end, contemporary Italian furniture, and (2) Gidatex's sale of such furniture in close proximity to Campaniello's show-rooms would harm Campaniello's business. Amended Answer and Counterclaim at pp. 21–22. Campaniello's argument boils down to a transparent attempt to insulate itself from the rigors of marketplace competition. Courts considering unfair competition and misappropriation claims have consistently rejected such a protectionist application of the law, holding that "one can capitalize on a market or a fad created by another provided that it is not accomplished by confusing the public into mistakenly purchasing the product in the belief that the product is the product of the competitor." *American Footwear Corp. v. Gen. Footwear Co.,* 609 F.2d 655, 662 (2d Cir.1979); *Jordache Enterprises, Inc. v. Levi Strauss & Co.,* 841 F.Supp. 506, 521 (S.D.N.Y.1993); *Diversified Marketing, Inc. v. Estee Lauder, Inc.,* 705 F.Supp. 128, 132 (S.D.N.Y.1988); *American Greetings Corp. v. Easter Unlimited, Inc.,* 579 F.Supp. 607, 617 (S.D.N.Y.1983). That Gidatex seeks to compete in the market for Italian furniture—which may have developed pursuant to Campaniello's efforts—is not prohibited by law.

Campaniello further avers that Gidatex intends to compete in the market for Italian furniture using its knowledge of "Campaniello's business, marketing techniques, and customers that it gained from its relationship with Campaniello." Amended Answer and Counterclaim at pp. 21–22. Gidatex's use of such information is actionable only if the information constitutes a protectable trade secret or if Gidatex acquired the information through some wrongful conduct. *See WMW Machinery Co. v. Koerber AG,* 240 A.D.2d 400, 658 N.Y.S.2d 385, 386–87 (2d Dep't 1997); *Rick J. Jarvis Associates Inc. v. Stotler,* 216 A.D.2d 649, 627 N.Y.S.2d 810, 812 (3d Dep't 1995); *NCN Co. v. Cavanagh,* 215 A.D.2d 737, 627 N.Y.S.2d 446, 447 (2d Dep't 1995). Campaniello does not allege either of these necessary facts. Accordingly, though Campaniello pleads that its goodwill will suffer if Gidatex competes with its stores, Campaniello has not adequately pleaded that Gidatex's conduct amounts to unfair competition or misappropriation.

Under its alternative theory, Campaniello claims that it possesses a protectable

**430**

interest in the *goodwill* that it has created in the Saporiti Italia *trademark.* This argument makes little sense because trademarks "are not separate property rights. They are integral and inseparable elements of the goodwill of the business or services to which they pertain.... [G]oodwill is inseparable from the business with which it is associated." *Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank,* 696 F.2d 1371, 1375 (Fed. Cir.1982) (internal citations omitted). Campaniello, therefore, cannot assert an interest in the goodwill associated with the trademark, independent of an interest in the mark itself.

Construing Campaniello's pleadings liberally, one might conclude that Campaniello is asserting an interest in the goodwill associated with Saporiti furniture. The problem with this interpretation is that Campaniello expressly denies having rights in the Saporiti mark, *see* Def's' Mem. at 11, and thus cannot have a protectable interest in the goodwill associated with Saporiti furniture. Consequently, Campaniello's counterclaims seeking to prevent Gidatex from "captur[ing] this goodwill," Amended Answer and Counterclaim at p. 21 (unfair competition claim), and "misappropriating the good will," *Id.* at p. 22 (misappropriation claim), must be dismissed.

### III. Conclusion

For the reasons stated above, Gidatex's motion to dismiss is granted with respect to Campaniello's breach of contract, unfair competition, and misappropriation counterclaims, and denied with respect to Campaniello's unjust enrichment counterclaim. Consequently, Campaniello's motion for a preliminary injunction, which turns on the likelihood for success of its unfair competition and misappropriation counterclaims, is denied. Campaniello's breach of contract claim is dismissed with prejudice, but Campaniello is granted leave to amend its unfair competition and misappropriation counterclaims. If Campaniello elects to amend its pleadings, it must do so no later than July 6, 1998.

SO ORDERED.