Emmy Lou EPIFANO, on behalf of herself and all others similarly suited, Plaintiff,

v.

BOARDROOM BUSINESS PRODUCTS, INC., South Bend Lathe, Inc., Omni Micro, Inc., Eastlake Securities, Inc., John W. Veenstra, Joan Nagelkirk, Kevin J. Quinn, Donald C. Corl and John Levy, Defendants.

Frederic G. APPLETON, individually and on behalf of all others similarly situated, Plaintiff,

v.

John W. VEENSTRA; Joan Nagelkirk; Nancy Singley; Kevin Quinn; Donald Corl; John Levy; Weinberg, Zipser, Arbiter, Heller & Quinn; and Eastlake Securities, Inc., Defendants.

SOLAR GROUP S.A., individually and on behalf of itself and all others similarly situated, Plaintiff,

v.

EASTLAKE SECURITIES, INC., John W. Veenstra, Joan Nagelkirk, Kevin J. Quinn, Donald C. Corl, South Bend Lathe, Inc., Omni Micro Inc., John Levy, and McGladrey & Pullen, Defendants.

Nos. 89 Civ. 0412(MGC), 89 Civ. 1352(MGC), 89 Civ. 2928(MGC).

United States District Court, S.D. New York.

April 13, 1990.

Berger & Montague, P.C., by Merrill G. Davidoff, Patricia D. Gugin, Philadelphia, Pa., and Thomas J. Hanrahan, New York City, for plaintiff Epifano.

Zlotnick & Thomas by David B. Zlotnick, Dennis J. Johnson, Bala Cynwyd, Pa., for plaintiff Appleton.

Bernstein, Litowitz, Berger & Grossmann by Daniel L. Berger, Vincent Cappucci, New York City, for Solar Group.

Wiener, Olenick, Amis & Bothfeld by L. Randolph Amis, III, Burlington, Vt., Roberts & Moels by Kenneth Roberts, New York City, for plaintiffs.

Cohen & McAlleenan by Richard W. Cohen, New York City, for defendant Eastlake Securities, Inc.

Reid & Priest by Michael R. Gordon, New York City, for defendants Weinberg, Zipser, Arbiter & Heller.

Weil, Gotshal & Manges by Nancy E. Barton, New York City, for defendants Veenstra, Nagelkirk, Corl, Quinn and Singley.

Williams & Connolly by David E. Kendall, Christopher C. Kearney, Washington, D.C., Richard L. Miller, Chicago, Ill., Bergadano, Zichello & Babchick by Jeffrey Seymour, New York City, for defendant McGladery & Pullin.

Frankel Pariser Rudder & Tritz by Jerry L. Tritz, and Reid & Priest by Daniel Levitt, New York City, for defendant Levy.

Rochman, Platzer, Fallick & Rosmarin by Barry Fallick, New York City, for defendants South Bend Lathe and Omni.

## OPINION AND ORDER

CEDARBAUM, District Judge.

These are three separate actions for fraud in connection with a public offering

of securities of Boardroom Business Products, Inc. The cases have been consolidated for pre-trial purposes. Each of the three plaintiffs now moves pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure to certify a class consisting of all persons who purchased the units and all persons who purchased either the debentures or the common stock on the open market during the period from August 30 through November 3, 1988. Excluded from the proposed class are defendants, their affiliates, members of the immediate families of the individual defendants, any entity in which any of the defendants has a controlling interest, and the legal representatives, heirs, successors, or assigns of any of the defendants. For the reasons discussed below, plaintiff Appleton's motion is granted and the motions of plaintiffs Epifano and Solar are denied.

## BACKGROUND

Boardroom Business Products, Inc. ("Boardroom") is a publicly held corporation that marketed microcomputer systems and related peripheral equipment. Boardroom was an authorized IBM dealer. The individual defendants, except John Levy, are all officers or directors of Boardroom.

In 1988 Boardroom entered into an agreement with Omni Micro Inc. ("Omni"), an authorized IBM dealer and retailer of computer hardware and software, and South Bend Lathe, Inc. ("South Bend"), the sole stockholder of Omni, to purchase substantially all of the assets of Omni. John Levy was president of Omni. McGladrey & Pullen, formerly known as McGladrey Hendrickson & Pullen, was Omni's certified public accounting firm.

The purchase was financed by a public offering of 6,500 units, each consisting of $1,000 principal amount of 8% convertible subordinated debentures and 700 shares of common stock. Eastlake Securities, Inc. ("Eastlake") was the underwriter for the units. Weinberg, Zipser, Arbiter, Heller &

Quinn was counsel to Boardroom in connection with the offering. On May 16, 1988, Boardroom filed its registration statement for the issuance of the units with the SEC. This statement was amended on July 11, 1988, on August 10, 1988, and again on August 25, 1988. The initial public offering of the units began on August 30, 1988 and was completed on September 7, 1988. On September 7, 1988, Boardroom consummated its agreement with South Bend and Omni. On January 19, 1989, Boardroom filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code.[1]

The three putative representatives have not filed a consolidated complaint. Although there are some differences in the factual allegations and the legal theories set forth in the complaints, the complaints arise out of the same set of facts and are brought against most of the same defendants. The basic theory of the three complaints is that the federal securities laws [2] were violated by the defendants' public dissemination of materially incorrect and misleading information concerning Boardroom and the August 30, 1988 public offering of the units. Particularly, plaintiffs allege that the registration statement, the prospectus, and the press releases were materially misleading. All the complaints allege that Boardroom securities are now virtually worthless.

## DISCUSSION

### A. *Background*

Plaintiffs move for class certification pursuant to Rule 23(b)(3) on the ground that their complaints satisfy the threshold requirements of 23(a) and the requirements of 23(b)(3) for a "common question" class. As a prerequisite to class certification, plaintiffs must show that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there

---

1. Boardroom's bankruptcy filing explains why only Epifano, the first of these plaintiffs to file, has named Boardroom in her complaint. The automatic bankruptcy stay has prevented the other two from doing so.

2. Epifano and Solar's complaints also contain common law claims against some of the defendants.

are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In order to be certified as a "common question" class, plaintiffs must show that:

questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

Defendants do not dispute that the class consists of well over one hundred members, thereby satisfying the numerosity requirement of 23(a)(1).

Defendants do not contest plaintiffs' assertions that the claims involve common questions of law and fact as required by 23(a)(2), and that these common questions of law and fact predominate over any individual questions as required by the first prong of 23(b)(3). An examination of the complaints shows that the questions underlying liability are the same for every class member. *See e.g. Green v. Wolf Corporation*, 406 F.2d 291 (2d Cir.1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Defendants oppose class certification on two grounds. First, they contend that a class action is not a superior method for adjudication of this controversy within the meaning of the second clause of 23(b)(3). Second, they argue that the three plaintiffs proposed to represent the class have defenses and claims peculiar to them, and would not be fair and adequate class representatives within the meaning of 23(a)(3) and (4).

B. *Superior Method For Adjudication*

■ A common question class may be certified only if "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) provides the appropriate factors to consider:

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

As to factor (A), defendants do not suggest nor does there seem to be any reason for the individual members of this class to desire to control their own litigation. As to factors (B) and (C), the extent and nature of the two suits commenced by other members of the class in other jurisdictions does not argue against class certification here. There are three actions in this court, the largest number in any forum. There is no showing that this concentration is undesirable. As to factor (D), the class, while large, is not unwieldy and, in view of the records that must be kept when securities are sold, it will not be an onerous task to identify class members for notification purposes.

■ There is a strong public policy in favor of private enforcement of the nation's securities laws. *See e.g. Basic Inc. v. Levinson*, 485 U.S. 224, 230–31, 108 S.Ct. 978, 982–83, 99 L.Ed.2d 194 (1988). A class action is both an effective and appropriate method for resolving securities law claims. *See e.g. Green*, 406 F.2d at 296–97.

■ Defendants argue that a class action is not a superior method primarily because the plaintiffs in the three suits are significant stakeholders who would be likely to pursue their actions without class certification. One of the purposes of a class action is to make litigation possible in situations where a large number of persons have been injured, "although no one person [has] been damaged to a degree which would have induced him to institute litiga-

tion solely on his own behalf." *Green* at 296. Clearly, class actions should not be abused by plaintiffs "to strengthen their bargaining position by threatening their adversaries with the prospect of class-wide relief and large attorney fee awards." *Stoudt v. E.F. Hutton & Co., Inc.,* 121 F.R.D. 36, 38 (S.D.N.Y.1988). These three cases do not present an abusive use of the class action. Although the damages the plaintiffs claim to have suffered range from $50,000 for Solar to $285,000 for Epifano, given the complexity of securities law cases, and the high cost of litigation, it is not clear that the cases would have been pursued without the class action possibility. In addition, there is evidence in the territorial distribution sheets submitted by the defendants that there are class members with very small claims who would not be able to proceed on their own. This is unlike the situation in *Zimmerman v. Thomson McKinnon Securities, Inc.,* 1989 WL 122742, 1989 U.S. Dist LEXIS 12029 (S.D.N.Y. October 11, 1989), a case relied on heavily by the defendants, in which the minimum investment was over $75,000.

Finally, another equally important purpose of class actions is to preserve the resources of both the courts and the parties by preventing a multiplicity and scattering of suits which essentially rely on the same legal theories and evidence. *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979). In view of the size of plaintiffs' claims in relation to the cost of pursuing this litigation, the likelihood that the class includes small stakeholders, and the potential number of suits this controversy could generate, I find that a class action is a superior method for adjudicating this dispute.

### C. *Class Representatives*

■ In order to qualify as a class representative, the putative representative must have claims and be subject to defenses that are typical of all members of the class. Fed.R.Civ.P. 23(a)(3); *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72

L.Ed.2d 740 (1982). If there are substantial defenses against a named plaintiff only and not against the rest of the class, that plaintiff is not an appropriate class representative. *See e.g. Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978). Similarly, in order to be a class representative, a plaintiff must fairly and adequately represent the interests of the class. Fed.R. Civ.P. 23(a)(4). This means in part that a representative should not have interests antagonistic to those of other members of the class. *Carroll v. American Federation of Musicians,* 372 F.2d 155, 162 (2d Cir.1967), *vacated on other grounds,* 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968). Another "essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968).[3] An additional consideration in assessing adequacy is the extent of the plaintiff's interest in the case in terms of active involvement and time spent. *Greenspan,* 78 F.R.D. at 133–34. A plaintiff who is not seriously interested in his own action cannot be relied on vigorously to pursue the claims of others.

#### 1. *Emmy Lou Epifano*

■ Emmy Lou Epifano alleges in her complaint that she purchased 475 units during the class period. In addition, she indicated in her motion papers that $190,000 worth of the units she purchased were purchased in the aftermarket between September 7 and September 15, 1988.

Emmy Lou Epifano purchased the units, except those she purchased in the aftermarket, from DWE Capital Markets ("DWE"), a National Association of Securities Dealers ("NASD") broker-dealer which was a member of the selling group of broker-dealers in the Boardroom public offering. Her husband is the sole owner of DWE. She is employed by DWE.

On August 30, 1988, DWE bought 350 units from Eastlake at $965 per unit pursuant to a selling agreement. According to a schedule provided by Epifano, on the same

---

**3.** There is no suggestion that plaintiffs' attor-    neys do not meet the required standard.

day, DWE sold her 285 of the 350 units at $1,000 each. Three days later, Epifano re-sold 185 of the 350 units at $1,010. There is evidence from Epifano's deposition that she bought Boardroom because her husband thought it would be a good investment. Dep. of Epifano, August 29, 1989, p. 54.

Pursuant to the Securities Exchange Act of 1934, the Securities and Exchange Commission has enacted rules governing the behavior of those dealing in securities. Rule 10b–6 of these rules provides in pertinent part:

(a) It shall be unlawful for any person,

\* \* \* \* \* \*

(3) Who is a broker, dealer, or other person who has agreed to participate or is participating in [a particular] distribution, ...

\* \* \* \* \* \*

... to bid for or purchase for any account in which he has a beneficial interest, any security which is the subject of such distribution, ... or to attempt to induce any person to purchase any security ..., until after he has completed his participation in such distribution: ...

17 C.F.R. § 240.10b–6 (1987).

It is not clear whether the class or the defendants have claims worth pursuing against Epifano, her husband or DWE. But counsel for the class must examine these potential claims in order to determine the best interests of the class in the matter. If Mrs. Epifano were a class representative, counsel for the class might not conduct as rigorous an examination of potential claims against her, her husband, or her husband's business. In addition, if the defendants have claims for contribution against her husband and DWE, Epifano might have interests that conflict with those of the class.

Further, Section 36 of the NASD Rules of Fair Practice prohibits broker-dealers from selling to related persons fixed price securities acquired in an underwritten pub-lic offering. DWE is a NASD broker-dealer. In addition, DWE agreed in the selling agreement to abide by the NASD Rules of Fair Practice. The alleged violation of the selling agreement may provide the defendants with defenses specific to Epifano. Also, since the conduct of her husband and DWE may have been in violation of the NASD rules, Epifano may have a conflict between vigorously pursuing the class claims and protecting against NASD disciplinary proceedings.[4] This also militates against her selection as a class representative. Although specific defenses have not been filed against Epifano,[5] and there is no indication that the NASD is investigating Epifano's transaction, the specter of these possibilities, combined with the potential class claims against her husband and DWE, warrants denial of her motion for certification as a class representative.

### 2. *Frederic Appleton*

Frederic Appleton purchased 100 units of Boardroom securities in the August 30, 1988 public offering. He is a member of the class, and his claims appear to be typical of the claims of all members of the class.

Defendants have abandoned their contention that because there are defenses peculiar to Appleton, he is not an appropriate class representative. Instead they seek to disqualify him as an inadequate representative because they find him not worthy of belief.

Appleton testified at his deposition that he did not know until his deposition that Solar had filed a class action suit arising out of its purchase of Boardroom securities. Both Solar and Appleton purchased their Boardroom securities through the same broker. Solar's investment counselor testified at his deposition that he had spoken to Appleton before the offering, before Boardroom's bankruptcy, and again in 1989. However, Solar's investment advisor also testified that he did not know until his

---

**4.** The defendants raise other claims and defenses that may be peculiar to Epifano. There is, however, no need to explore all of them here.

**5.** The defendants have asked for permission to amend their answer to Epifano's complaint.

deposition that Appleton had filed a class action suit arising out of his purchase of Boardroom securities. Defendants argue that Appleton's testimony is incredible. Substantial grounds for an attack on the credibility of a proposed representative may justify rejection of that representative. For example, in *Kline v. Wolf,* 702 F.2d 400 (2d Cir.1983), plaintiff Block testified that he had relied on a report that he later admitted did not exist at the time he allegedly relied on it. Plaintiff Kline testified that she had invested in the securities at issue on the advice of her husband, who in turn claimed that he had relied on the advice of a broker. However, the broker testified that he never recommended the stock. Kline also refused to answer several significant questions. The Second Circuit held that "since plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack, the district court reasonably concluded that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims." *Id.* at 403. Here, however, the issue on which defendants find Appleton not credible is one that goes neither to his claim nor to any defense. In addition, defendants' assertion of Appleton's lack of credibility is not based on other evidence, as it was in *Kline,* but simply on their disbelief of his testimony. In fact, the testimony at issue was corroborated by one witness and has not been contradicted. Thus, Appleton should not be disqualified on credibility grounds.

Appleton's claims are typical of those of the class. There are no apparent defenses peculiar to him. No one has identified any personal interests Appleton might have that would be antagonistic to the interests of other members of the class. Appleton's deposition testimony indicates that he intends to pursue the class claims vigorously, and that he understands the claims and the responsibilities of a class representative. Appleton is represented by counsel able to conduct this type of securities litigation on behalf of a class. Therefore, I certify Appleton as a class representative.

### 3. *Solar Group*

██ Solar Group, S.A. is a Panamanian corporation. Solar's sole shareholder, Evelyn Todd, is a citizen of the United Kingdom who resides in Bermuda. Todd is also president and treasurer of Solar. Solar has two other officers and no employees. Leonard Zelin, an employee of Somerset Management Asset Corporation, is an investment manager authorized by Todd to invest certain accounts on behalf of Solar. On about August 30, 1988, Zelin purchased 50 units of Boardroom securities for Solar. Zelin appeared for Solar at the deposition of Solar noticed by defendants.

Defendants' objection to Solar as a class representative is that Solar would not fairly and adequately represent the class for two reasons. First, they point to the noninvolvement of anyone from Solar in this litigation. Second, they note that Zelin has indicated a willingness to settle if his clients were made whole.

Zelin testified at his deposition that he had approached Todd and suggested to her that Solar should initiate and pursue this action. She gave him permission to proceed, and he then retained an attorney. At the time of Zelin's deposition, almost four months after the complaint had been filed, he had not spoken with Todd in the interim, not even to advise her that Solar was to be deposed. On December 8, 1989, at the oral argument of this motion, almost seven months after the filing of suit, Solar's counsel advised that while they considered themselves Solar's counsel, they have dealt with Solar exclusively through Zelin.

The following exchange occurred at the deposition of Zelin:

MR. COHEN: If East Lake (sic) or another party were to offer, to make Solar whole by paying $66,000.00, would Solar consider withdrawing this lawsuit?

MR. BERGER: I object to the question but you can answer.

MR. ZELIN: If they would make the customers, all the clients at Somerset whole.

MR. COHEN: No further questions.

MR. BERGER: We may have one or two questions but let us have a minute, please.

(Whereupon, a brief recess was taken.)

MR. BERGER: Could you just read the last question and answer back, please.

(Whereupon, the above referred to question and answer were read by the reporter.)

MR. COHEN: Let the record reflect that we had a recess of several minutes since that question was asked and answered.

MR. ZELIN: I want to reflect that if all those that were injured were restituted with damages then Solar Group would drop the case.

CONTINUED EXAMINATION BY

MR. COHEN: But that's not what you answered before the recess, is that correct?

MR. ZELIN: I meant that. Everybody that was involved in the case.

MR. COHEN: Did you discuss this with your attorney while the recess was going on?

\* \* \* \* \* \*

Dep. of Zelin, September 6, 1989, p. 66–67. Zelin also testified at his deposition that he had purchased Boardroom securities for himself and his firm had purchased Boardroom securities for clients other than Solar.

■ While unfamiliarity with the suit does not by itself require denial of representative status, *Kamerman v. Steinberg*, 113 F.R.D. 511 (S.D.N.Y.1986), it is certainly a factor to be considered in determining the adequacy of the proposed representative. *Greenspan*, 78 F.R.D. at 133–34. Here, although Todd is apparently willing to fund the litigation, there is no evidence that any officer, director or employee of plaintiff Solar has done anything to become informed about the litigation since its inception. Zelin, not Solar, is really being put forward to act as class representative in the name of Solar. But Zelin is himself a class member and has financial ties to certain other members of the class. He is not a typical member of the class in this respect. Furthermore, his special interest in particular members of the class raises some question about his undivided loyalty to all members of the class. Zelin's willingness to settle the case if Solar and his firm's other clients were made whole, although recanted after discussion with counsel, illustrates the problem. The combination of these factors leads to the conclusion that Solar acting through Zelin would not be an appropriate class representative.

## CONCLUSION

For the reasons discussed above I certify the class in *Appleton v. Veenstra,* 89 Civ. 1352 (MGC) and deny class certification in *Epifano v. Boardroom Securities*, 89 Civ. 0411 (MGC) and *Solar Group S.A. v. Eastlake*, 89 Civ. 2928 (MGC).

SO ORDERED.