Abdulaziz A. ALFADDA, et al., Plaintiffs,

v.

Richard A. FENN, et al., Defendants.

Abdulrahman A. AL–TURKI, et al., Plaintiffs,

v.

Richard A. FENN, et al., Defendants.

Nos. 89 Civ. 6217 (LMM), 90 Civ. 4470 (LMM).

United States District Court, S.D. New York.

May 6, 1993.

**29**

Switzerland. For the reasons discussed below, the motion is denied.

## BACKGROUND

Defendant Jamal Radwan, a United States citizen, is the Chairman and Managing Director of defendant Saudi European Investment Corporation N.V. ("SEIC") (a Netherlands Antilles corporation), and the former Managing Director of defendant Alef Investment Corporation N.V. ("AIC") (a Netherlands Antilles Corporation). SEIC was incorporated in 1979. Until 1984, SEIC's balance sheet showed a total capital base of $40,000,000, comprised of $20,000,000, which represented 20,000 issued and fully paid shares, and $20,000,000 in "convertible capital notes." The capital note holders—AIC, Dalia Products Corporation ("Dalia") (a Panamanian corporation), and North South Finance Corporation ("North South") (a Panamanian Corporation)—were contractually obligated to pay a total of $20,000,000 into SEIC upon the call of SEIC's Managing Director. Twenty thousand authorized but unissued shares were reserved for the convertible capital note holders.

In 1983, SEIC decided to increase its capitalization and called the capital notes. Thereafter, the 20,000 shares held by the original SEIC shareholders and the 20,000 shares to be issued to the capital note holders were split 3 for 1 and then 10 for 1 and the par value was restated to $0.10. SEIC also authorized the issuance of an additional 600,000 shares to be sold for $100 per share with a par value of $0.10. This action arises out of the 1984 offering of those 600,000 shares of SEIC stock.

Plaintiffs claim, *inter alia*, that defendants: (1) deliberately diluted the ownership interest in SEIC of subscribers to the 1984 offering, including plaintiffs, by oversubscribing the voting shares sold in the offering and converting, without disclosure, the capital notes into voting stock; and (2) diverted the proceeds of the 1984 offering through various corporate entities for the benefit of defendant Radwan and others. One document to which plaintiffs point in support of these claims is a share ledger of SEIC which allegedly reflects the oversubscription of the 1984 offering and the diversion of the proceeds of

Jeffrey R. Parsons of Beirne, Maynard & Parsons, Houston, TX, for plaintiffs.

David R. Jewell of Donovan Leisure Newton & Irvine, New York City, for defendants Saudi European Inv. Corp. N.V., Alef Inv. Corp. N.V., and Jamal Radwan.

## MEMORANDUM OPINION

KATZ, United States Magistrate Judge.

These actions were referred to me for general pretrial supervision by Order of Reference, dated February 17, 1992. Currently before the Court is a motion by defendant Jamal Radwan, pursuant to Rule 26(c), Fed. R.Civ.P., for an order protecting from discovery certain information which he claims he is prohibited from disclosing by the laws of

that offering. *See* Plaintiff's Response to Motion for Protective Order, dated February 25, 1993 ("Plaintiffs' Response"), Exhibit 2.

In October 1992, plaintiffs served SEIC and AIC with Notices of Deposition, pursuant to Rule 30(b)(6), Fed.R.Civ.P. Attached was a schedule of potential subject matter, which included items related to the alleged diversion of proceeds of SEIC's 1984 offering. Specifically, the Notices included: identification of all directors, officers, principals, managing agents and shareholders of the entities reflected in SEIC's share ledger, *see* Notice item A(5)(f); the amounts of money transferred in connection with the transactions reflected in the share ledger, *see* Notice items A(6)(a–b); and the identity of individuals and entities who benefitted from the transactions reflected in the share ledger, *see* Notice item A(6)(c).

Defendants initially moved to quash the Notices and for additional protection on the grounds that it would be burdensome for defendant Radwan to be deposed repeatedly in both his individual and corporate representative capacities and that plaintiffs' discovery requests were overbroad and not calculated to lead to the discovery of admissible evidence. *See* Letter from John D. Worland, Jr., counsel for SEIC and AIC, dated November 20, 1992. Defendants raised no objection that testimony on the specified subject matters would require their corporate representative to violate Swiss secrecy laws. After a hearing in November 1992, the Court entered an Order, dated December 18, 1992 ("December Order"), denying defendants' motion to quash the Notices and directing

that the parties expeditiously reschedule the Rule 30(b)(6) depositions of SEIC and AIC. Defendants did not appeal the December Order and Jamal Radwan consented to appear and testify as the corporate representative of both companies.

At his deposition, Radwan refused to answer certain questions on the grounds that he was prohibited from revealing the information sought by Swiss secrecy laws. Radwan claimed that he had recently been advised by counsel in Switzerland, Maitre Olivier Weber–Caflisch, that he could be subject to severe penalties under Swiss law if he revealed such information. Although this issue was raised for the first time during Radwan's deposition, and at that time Radwan's United States counsel was unable to explain the precise nature of the Swiss secrecy objections raised, the Court, over plaintiffs' objection, granted defendant time to seek a protective order in relation to the withheld information, assuming United States counsel could reasonably justify such a motion.

The questions to which Radwan raised a Swiss secrecy objection related to five entities: Dalia[1]; AIC[2]; AIC Gerance[3]; Saudi International Investment Corporation ("SIIC"), a Panamanian corporation which was a shareholder in AIC; and Saudi Marketing Europe Establishment ("SMEE"), a Vaduz company.[4] Specifically, Radwan refused to testify:

(1) Who managed SMEE during the 1980's. (Transcript of Deposition ("Dep.Tr.") at 123.)

---

1. Dalia is a Panamanian corporation which appears on the SEIC share ledger as a shareholder in SEIC. The share ledger also reflects that SEIC held a capital note callable from Dalia for $5,400,000. According to a 1987 Auditors' Report, Radwan was President of Dalia at that time.

2. AIC, a defendant in this case, is a Netherlands Antilles corporation of which Radwan was formerly managing director. AIC was a shareholder in SEIC. SEIC also held a capital note callable from AIC for $8,200,000.

3. The relationship between AIC and AIC Gerance is not entirely clear. At his deposition, Radwan testified that "gerance" means managed, management or trust, and that "AIC Gerance" was

"a structure in Switzerland that AIC N.V. dealt with". *See* Dep.Tr. at 284–85, 288–89. AIC Gerance appears on the SEIC share ledger in the same column as AIC and the ledger does not appear to distinguish between shares of AIC, held on its own behalf, and shares of AIC Gerance which were held on behalf of others. *See* Plaintiffs' Response, Exh. 2.

4. SMEE was apparently a shareholder in both Dalia and AIC. In addition, plaintiffs allege that SMEE was secretly assigned the $20,000,000 in SEIC capital notes from AIC, Dalia, and North South corporation. Plaintiffs also allege that SMEE is owned and controlled by Radwan and his family.

(2) Whether SMEE received proceeds from the sale of SEIC stock. (Dep.Tr. at 123–24.)

(3) What SMEE's involvement was with the SEIC capital notes. (Dep.Tr. at 177, 181–83.)

(4) Who Radwan dealt with at SMEE. (Dep.Tr. at 236.)

(5) Who the shareholders or owners of SMEE were. (Dep.Tr. at 226, 228.)

(6) What Swiss banks he (Radwan) was an advisor to in 1979. (Dep.Tr. 267.)

(7) Who the fund manager was who approached him regarding the purchase by Dalia of SEIC shares. (Dep.Tr. at 210–11, 217–220.)

(8) Who benefitted from the sale of SEIC shares by "AIC Gerance." (Dep.Tr. at 284–85, 288–89.)

(9) Who attended an AIC shareholders' meeting. (Dep.Tr. at 542.)

(10) The identity of the fiduciary who determined to hold the AIC shareholders' meeting in Switzerland. (Dep.Tr. at 567–68, 612–14.)

(11) The identity of the fiduciary in whose possession the articles of incorporation of SIIC were last seen. (Dep.Tr. at 602–03.)

## DISCUSSION

### A. Overview of Swiss Secrecy Laws

Radwan claims that he is prohibited from responding to the above-listed inquiries by a variety of Swiss laws, and has submitted opinions from experts in Swiss law to that effect. Radwan claims that his conduct is governed by Swiss secrecy laws because he was formerly President of Saudi European Finance SA—Geneva ("Saudi Finance"), a Swiss Affiliate of SEIC founded in 1985, see Declaration of Jamal Radwan, dated February 19, 1993 ("Radwan Decl."), ¶ 1; he was the banker for SMEE, see Dep.Tr. at 236, 266–67; and because his involvement with SMEE, Dalia, AIC, and SIIC is governed in each case by "agency powers, mandates or signature mandates, authorizing [him] to sign on behalf of such companies, all of which are governed by Swiss law." See Radwan Decl. ¶ 7. Plaintiffs claim that the Swiss laws in-

voked by Radwan are not implicated in this case, and they too have submitted expert opinion letters to this effect. The Swiss laws at issue are: (1) Article 162 of the Swiss Criminal Code; (2) Article 273 of the Swiss Criminal Code; (3) Article 28 of the Swiss Civil Code; and (4) Article 47 of the Swiss Federal Banking Act.

The following discussion of Swiss law is essentially a summary of the opinions expressed by the experts for the parties in this case. As this summary will demonstrate, the parties in this case have significantly divergent views as to the scope and proper interpretation of Swiss law, and they have not submitted controlling Swiss authority to the Court in support of their respective positions. In the few instances where it has been possible to cite independent authority regarding the scope of these Swiss laws, reference has been made to United States caselaw and law review articles which discuss the Swiss statutes in issue.

### 1. Article 162 of the Swiss Criminal Code

Article 162 of the Swiss Criminal Code ("Art. 162") bars the disclosure of commercial secrets by those legally or contractually obligated to maintain their secrecy. See Radwan Decl., Exhibit 8A ("Treuillaud Opinion") at 3–5. According to defendant's expert, Me. Raphael Treuillaud, commercial secrets are defined as any facts related to the operation of a business or the commercial affairs of an individual which are not generally known and which the business or individual wishes to keep secret for the sake of its commercial activities. See Treuillaud Opinion at 4. According to plaintiffs' expert, Dr. Ursula Cassani, commercial secrets are defined more narrowly, as facts relevant to the economic result achieved by a company, for example, manufacturing processes, plans, suppliers and customer lists. See Plaintiff's Response, Exhibit 9A ("Cassani Opinion") at 5. The legal obligation to maintain the secrecy of such information is generally created by contract, mandate agreement, or agency relationship where the information was transmitted by reason of that contract, agreement or relationship. See Treuillaud Opinion at 4; Treuillaud Supplemental Opin-

ion at 3; Cassani Opinion at 5; *see also* Radwan Decl., Exhibit 7 ("Weber–Caflisch Opinion") at 9. The secrecy obligation continues, however, even after the termination of the contract which gives rise to it. *See* Treuillaud Opinion at 5; Weber–Caflisch Opinion at 6.

Both plaintiffs and defendant agree that prohibited disclosures which occur in Switzerland are violative of Art. 162. *See* Cassani Opinion at 5; Treuillaud Opinion at 5. Defendant contends, and plaintiffs deny, that, in addition, disclosures which occur outside of Switzerland violate Art. 162 if the secret revealed was learned in Switzerland by the party disclosing it. *Id.* According to defendant, the Swiss Criminal Code prohibits disclosures which occur outside Switzerland because Article 7 ("Art. 7") of the Criminal Code provides that an offense is deemed to have taken place where the offender acted and where the consequences of that action occurred. *See* Weber–Caflisch Opinion at 5.

Plaintiffs' expert contends that Art. 7 is inapplicable to violations of confidentiality obligations. *See* Cassani Opinion at 4. Swiss law distinguishes between "formal" and "material" offenses. "Formal" offenses are committed by engaging in particular conduct; "material" offenses are also committed by engaging in particular conduct, but are completed only if a certain result occurs. Murder, for example, is a material offense which is completed only if the victim dies. Secrecy violations, on the other hand, are formal offenses which are complete regardless of any result caused by the disclosure (e.g. pecuniary loss). *See* Cassani Opinion at 5. According to plaintiffs' expert, under Article 3 of the Swiss Criminal Code ("Art. 3"), unless there is an explicit exception stated in the law, the provisions of the Code apply only to offenses committed in Switzerland. Plaintiffs' assert that Art. 7 simply defines where offenses may be considered to have occurred. Under Art. 7, a material offense, which by definition includes both an action and a result, is deemed to have taken place

at the location of both the act and the result. However, under Art. 7, a formal offense, which by definition includes only an action, is deemed to have occurred at the location of the act. Thus, secrecy violations, being formal rather than material offenses, occur wherever the disclosure is made and, under Art. 3, disclosures of "commercial secrets" which occur outside Switzerland are not covered by the Swiss criminal law. *Id.*

The secrecy required by Art. 162 may be waived by the consent of the person or entity who "owns" the commercial secret. *See* Treuillaud Opinion at 5; Affidavit of David R. Jewell, dated February 19, 1993 ("Jewell Affidavit"), Exhibit 2A ("Treuillaud Supplemental Opinion") at 4; Weber–Caflisch Opinion at 8. Prosecutions under Art. 162 are commenced only upon the complaint of the party injured by the illegal disclosure. *See* Treuillaud Supplemental Opinion at 4; Cassani Opinion at 5. Violations of Art. 162 are punishable by fine or up to three years imprisonment. *See* Treuillaud Opinion at 5.

### 2. *Article 273 of the Swiss Criminal Code*

Article 273 of the Swiss Criminal Code ("Art. 273") makes it a crime to reveal manufacturing or business secrets to a public or private foreign authority or its agents. Whereas Art. 162 is intended primarily to protect private interests, Art. 273 is intended to protect Swiss sovereignty and the Swiss economy. *See* Treuillaud Opinion at 5–6; Jewell Affidavit, Exhibit 3A ("General Attorney's Memorandum")[5] at 1. Because of the public interests protected, prosecution does not depend upon a complaint being filed by an injured party. *See* General Attorney's Memorandum at 2; Treuillaud Opinion at 6. Also, because Art. 273 is meant to protect Swiss sovereignty and the Swiss economy from foreign espionage, it generally may not be invoked to protect foreign persons or entities unless the interests of such foreign persons are so intertwined with Switzerland as to be inseparable. General Attorney's

---

5. The General Attorney's Memorandum is a document drafted by the Swiss authorities, as a result of repeated conflicts between American discovery obligations and Swiss secrecy obligations, to explain (in English) the provisions of Art. 273. The Memorandum provides an overview of Art. 273; it is not an opinion regarding the applicability of Art. 273 to the facts of this case.

Memorandum at 4. According to plaintiffs, entities whose "statutory seat" or place of incorporation is located outside Switzerland are considered "foreign" entities which are not protected by Art. 273. *See* Cassani Opinion at 6–7. According to defendant, entities whose "effective office" or place of management is in Switzerland are protected by Art. 273, regardless of the location of their formal, registered office or place of incorporation. *See* Treuillaud Opinion at 1; Treuillaud Supplemental Opinion at 5.

Under Art. 273, "manufacturing or business secrets" are defined as "all facts of business life (1) which are neither commonly known or generally accessible, (2) which the interested person(s) desire(s) to keep secret and (3) in respect to which an objective interest in keeping them secret exists." General Attorney's Memorandum at 2; *see also* Lutz Krauskopf, *Comments on Switzerland's Insider Trading, Money Laundering, and Banking Secrecy Laws*, 9 Int'l Tax & Bus. Law. 277, 295 (1991–1992) ("*Comments on Switz.*"); Treuillaud Opinion at 6. These secrets fall into two categories: (1) secrets of national importance to Switzerland as an economic and political entity, for example the stockpiling of strategically important goods, and (2) secrets of a private nature regarding Swiss individuals or entities. *See* General Attorney's Memorandum at 3; Cassani Opinion at 7. As to the second category of secrets, consent to disclosure is a defense to prosecution. *See* General Attorney's Memorandum at 3; Cassani Opinion at 7; *see also* Weber–Caflisch Opinion at 8; *but see Comments on Switz.* at —— (unclear whether consent is a defense to prosecution under Art. 273); Treuillaud Opinion at 7 (consent not a defense under Art. 273). Prosecution under Art. 273 is apparently rare and occurs only in cases involving the first category of secrets, where Swiss national interests are actually endangered by disclosure. *See Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 524 (S.D.N.Y.1987).

### 3. Article 28 of the Swiss Civil Code

Article 28 of the Swiss Civil Code ("Art. 28") allows private parties to recover damages for pecuniary loss caused by the disclosure of confidential commercial or business activities, manufacturing processes, or information regarding a business organization. *See* Treuillaud Opinion at 2–3; Cassani Opinion at 8–9.

### 4. Article 47 of the Swiss Banking Act

Article 47 of the Swiss Banking Act ("Art. 47") prohibits disclosure by bank employees or agents of confidential customer information without the customer's consent. Both parties' experts appear to agree that this statute does not apply to private brokers or investment managers whose activities are not conducted through a Swiss bank. *See* Cassani Opinion at 8; Weber–Caflisch Opinion at 2–3. Confidential information includes the customer's name, the fact of the banker's relationship with the customer, the type of account and transactions, information given by the customer concerning her financial situation, and any information concerning the bank's own transactions with the customer. *See Minpeco v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 524 (S.D.N.Y.1987); *Comments on Switz.* at 294; *see also* Treuillaud Supplemental Opinion at 3–4. Prosecution may be initiated without a complaint from an injured party, and violations are punishable by fines or imprisonment of up to six months. *See Comments on Switz.* at 294; Jewell Affidavit, Exhibit 4A at 2.

### B. Propriety of Protective Order

█ It is undisputed that this Court has the power to require Radwan to answer the questions posed by plaintiffs' counsel at the deposition, even if to do so would require Radwan to violate Swiss law. *See Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 529 n. 4, 107 S.Ct. 2542, 2546 n. 4, 96 L.Ed.2d 461 (1987); *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 116 (S.D.N.Y.1981); Jewell Letter at 5; Plaintiff's Response, Exhibit 9 ("Plaintiffs' Memorandum of Authorities"), at 4. The question is whether the Court should exercise its discretion to issue the protective order sought by Radwan. *See Minpeco*, 116 F.R.D. at 520; *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105

F.R.D. 16, 28 (S.D.N.Y.1984). In deciding the propriety of ordering disclosures prohibited by the law of a foreign nation, the Court should consider: (1) the competing interests of the nations whose laws are in conflict; (2) the hardship of compliance on the party or witness from whom discovery is sought; (3) the importance to the litigation of the information sought; and (4) the good faith of the party resisting discovery.[6] *Minpeco*, 116 F.R.D. at 523; *see also United States v. Davis*, 767 F.2d 1025, 1033–34 (2d Cir.1985); *Trade Development Bank v. Continental Insurance Co.*, 469 F.2d 35, 41 (2d Cir.1972).

 In addition, it is worth remembering that the party relying on foreign law bears the burden of demonstrating that such law actually bars the production or testimony at issue. *See United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir.1981); *Roberts v. Heim*, 130 F.R.D. 430, 436 (N.D.Cal.1990). In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law. *See Compagnie Francaise*, 105 F.R.D. at 24–25; *State of Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374 (10th Cir.1978). Similarly, under Rule 26(c), Fed.R.Civ.P., a party seeking a protective order must demonstrate "good cause" for issuance of the order. This requires specific and particular demonstrations of fact, not stereotyped or conclusory statements. *See, e.g., Gelb v. AT & T*, 813 F.Supp. 1022, 1034 (S.D.N.Y.1993); *Waltzer v. Connor*, No. 83–8806, 1985 WL 2522, *1 (S.D.N.Y. September 12, 1985); 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2035 at 264–65 (1970); *Cf. Gulf Oil v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 2201 n. 16, 68 L.Ed.2d 693 (1981).

### 1. National Interests

 The United States has a strong national interest in the enforcement of its securities fraud laws, which are one basis of liability in this action. *See, e.g., Fleck v. E.F. Hutton*, 891 F.2d 1047, 1051 (2d Cir.1989); *Epifano v. Boardroom Business Products*, 130 F.R.D. 295, 298 (S.D.N.Y.1990); *Alfadda v. Fenn*, No. 89–6217, Memorandum and Order, dated January 29, 1993 (McKenna, J.) ("January 1993 District Court Order"), at 5, 1993 WL 33445. That interest is significant, despite the fact that a case is not a criminal or civil enforcement action, because private rights of action under RICO and the securities laws "have the effect—intended by Congress—of enforcing the law by means of 'private attorney generals.' ... In fact, it is difficult to imagine a private commercial lawsuit which could be more infused with public interest." *Minpeco*, 116 F.R.D. at 523. The United States also has an interest in the full and fair adjudication of matters before its courts, which is only possible through complete discovery. *Id.; Compagnie Francaise*, 105 F.R.D. at 30.

The strength of the Swiss national interest in this case is less certain. Obviously, as a general matter, Switzerland has a strong interest in enforcement of its secrecy laws. *See Minpeco*, 116 F.R.D. at 524–25. Nonetheless, two considerations cut against the Swiss interest here. First, "when foreign governments ... have considered their vital national interest threatened, they have not hesitated to make known their objections...." *See U.S. v. First National City Bank*, 396 F.2d 897, 904 (2d Cir.1968). Consequently, a foreign government's failure to express a view that the disclosure at issue threatens its national interests militates against a finding that strong national interests of the foreign country are at stake. *See Minpeco*, 116 F.R.D. at 525; January 1993 District Court Order at 4–5; *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 117–18 (S.D.N.Y.1981). In this case, Switzerland, despite an opportunity to do so, has not expressed any view nor attempted to intervene in any manner to prevent disclosure of the information plaintiffs seek. The letter

---

**6.** Although less significant, the nationality of the person invoking foreign law and the extent to which the required disclosure would take place in the foreign state are also relevant to the propriety of ordering disclosure. *See Minpeco*, 116 F.R.D. at 522. In this case, Mr. Radwan is an American citizen, the companies he represents are Netherlands Antilles corporations and the disclosures would take place in the United States.

from M. Peter, Deputy General Attorney of the Swiss Confederation ("Peter Letter"), submitted by defendants, *see* Jewell Affidavit, Exhibit 3, is not the expression of a view regarding this motion. The letter merely clarifies the requirements of Swiss law, but makes no attempt to apply the law to the facts of this case. Accordingly, the Peter Letter cannot be considered an intervention by the Swiss government or the expression of that government's views on this case. In fact, the letter makes clear that, to the extent that Swiss sovereignty interests are at stake, it is the Ministry of Foreign Affairs from whom a viewpoint as *amicus curiae* should be sought. That has not been done.

Second, as discussed further *infra,* the applicability of the Swiss secrecy laws to the facts involved in the instant motion is not at all clear. Unlike *Minpeco,* 116 F.R.D. at 525, where all the experts agreed that Art. 47 prohibited the disclosures in question, there is a significant dispute in this case between the parties' experts as to whether any Swiss law prohibits disclosure of the information sought by plaintiffs. To the extent that Swiss law is not truly implicated, Switzerland clearly does not have any interest in preventing the disputed discovery.

### 2. Hardship

Mr. Radwan claims that he will suffer great hardship if he is forced to reveal the information at issue here. He bases these claims of hardship on the opinions of Me. Treuillaud and Me. Weber–Caflisch that were he to answer the questions posed at his deposition he would face fines, imprisonment, civil suits, and adverse professional consequences under Swiss law. *See* Letter from Defendants' Counsel, David R. Jewell, dated February 19, 1993 ("Jewell Letter"), at 9. Plaintiffs claim, however, that the threat of hardship to Mr. Radwan is either remote or non-existent. They cite the legal opinion of their expert, Dr. Cassani, for the proposition that none of the provisions of Swiss law invoked by Mr. Radwan bar disclosure of the information sought by plaintiffs and that Radwan would face no penalties thereunder.

For example, according to plaintiffs' expert, the Swiss Criminal Code, which includes Art. 162, simply does not apply to disclosures of commercial secrets which occur outside the territory of Switzerland. *See* Cassani Opinion at 4–5. Further, according to Dr. Cassani, little of the information at issue would be considered a "commercial secret" within the meaning of Art. 162. *Id.* at 5. For instance, even if SMEE were a Swiss rather than a Vaduz company, the identities of the managers and directors of SMEE (*See* Questions 1 and 4, *supra* at pages 30–31), would be a public fact, recorded in the Registry of Commerce and generally accessible. *Id.* at 32. Finally, even were Art. 162 applicable here, prosecutions under Art. 162 are commenced only upon complaint of the party injured by disclosure. Because a confidentiality order has been entered in this case, the likelihood that the disclosure will be discovered or will cause injury is greatly reduced. *Id.* at 30. Mr. Radwan thus faces no real threat of prosecution under Art. 162 if plaintiffs' expert is correct in her explanation of Swiss law.

Dr. Cassani further states that Art. 273 protects only Swiss domiciliaries. She claims that, for the purposes of Art. 273, a company is considered a Swiss domiciliary only if its "statutory seat" or place of incorporation is Switzerland. *Id.* at 31. Thus, secrets belonging to SMEE, Dalia, AIC or SIIC, none of which are officially Swiss companies, would not be protected by Art. 273. She does admit that the identity of the beneficial owners of these companies (*see* Questions 5, 8 and 9, *supra* at 31), if the beneficial owners are Swiss domiciliaries, may be protected by Art. 273. *Id.* at 31. However, Mr. Radwan has submitted no evidence, nor even alleged, that any of the beneficial owners of the companies at issue are Swiss. Given that fact, and the infrequency of prosecution under Art. 273, *see Minpeco,* 116 F.R.D. at 273, the likelihood that he would face prosecution under Art. 273 for disclosure of the owners is highly questionable.

Finally, Dr. Cassani points out that several obstacles must be overcome before Mr. Radwan could be held liable in a civil suit. First, a potential plaintiff would have to gain knowledge of an improper disclosure by Rad-

wan, the likelihood of which is decreased by the existence of the confidentiality order in this case. *See* Cassani Opinion at 8. Second, a potential plaintiff would have to show that she suffered the consequences of Radwan's disclosure in Switzerland. *Id.* at 9. Finally, in order to recover damages, a potential plaintiff would have to prove that Radwan's improper disclosures caused her a pecuniary loss. *Id.*

Defendant Radwan's experts have expressed different views about the proper scope of Swiss law. However, even accepting as true Radwan's assertions regarding the proper interpretation of the Swiss laws at issue, Radwan has still failed to make a factual showing sufficient to establish that Swiss secrecy laws protect the information sought and expose him to penalties if he responds to plaintiffs' questions.

Radwan and his experts have themselves asserted somewhat inconsistent bases for the applicability of Swiss secrecy law. As the factual basis of Me. Weber–Caflisch's opinion that Radwan is prohibited from answering the questions posed at his deposition and will face severe consequences if he does, he states that: (1) Radwan was involved in a banking relationship with SMEE, Dalia, AIC, and SIIC; and (2) all the information Radwan possesses about each company is covered by the Swiss secrecy laws because that information either arose from the banking relationship or was learned by Radwan during the course of that relationship. *See* Weber–Caflisch Opinion at 9, 11, 12. Me. Treuillaud's opinion that Swiss secrecy laws, other than the Banking Act, prohibit Radwan from answering the contested deposition questions is based on his assumption that: (1) the companies about which plaintiffs are seeking information have their "registered or effective office" in Switzerland; (2) the companies are managed in Switzerland; (3) the business or commercial activities of the companies take place in or from Switzerland; and (4) Radwan is the legal agent or attorney of each company. *See* Treuillaud opinion at 1–2. Fi-

nally, Radwan and his United States counsel assert that Swiss secrecy obligations exist because: (1) Radwan was formerly President of Saudi European Finance SA–Geneva, a Swiss affiliate of SEIC established in 1985;[7] and (2) Radwan's involvement with each company at issue is governed by agency powers, mandates and signature mandates authorizing him to sign on behalf of the companies and which are governed by Swiss law. *See* Jewell Letter at 3; Radwan Decl. at ¶ 7. Few of these factual assumptions regarding the companies about which information is sought and their relationships with Radwan are supported by competent evidence. Nor is it clear that the information plaintiffs seek is encompassed by the prohibitions of Swiss law.

*a. SMEE*

The evidence of the existence of a banking relationship between Radwan and SMEE, as asserted by Me. Weber–Caflisch, is Radwan's deposition testimony that he acted as SMEE's banker in both France and Switzerland, *see* Dep.Tr. at 236, 266–67, although Radwan declined to identify any Swiss bank to whom he was an advisor. *See* Dep.Tr. at 267. The strength of Mr. Radwan's reliance on Art. 47 of the Banking Act is undermined, however, by the fact that Mr. Jewell, his United States counsel, offered only the equivocal assertion, in a footnote, that Radwan's "conduct *may* be subject to Article 47 of the Swiss Federal Banking Act." (emphasis added). *See* Jewell Letter at 4 n. 5; *see also* Treuillaud Supplemental Opinion at 3.

As for Me. Treuillaud's assumptions, *see supra* at 36, Radwan did testify that SMEE's "management and all its operations are under Swiss law," *see* Dep.Tr. at 236, and that SMEE is managed by a Swiss fiduciary. *See* Dep.Tr. at 266. Radwan also stated in his affidavit in conclusory fashion that his involvement with SMEE is governed by agency powers or mandates which are governed

---

7. It is not clear, and no explanation has been offered, how any of the information which plaintiffs seek about the 1984 SEIC offering could have been acquired through Radwan's position as President of an SEIC affiliate which was not created until 1985, as opposed to through his positions as Chairman and Managing Director of SEIC or Managing Director of AIC.

by Swiss law.[8] *See* Radwan Decl. at ¶ 7. On the other hand, there is some evidence to suggest that Radwan may have knowledge regarding SMEE which derives from his ownership and control of SMEE, not from his alleged functioning as its banker or agent. *See* Plaintiffs' Response, Exhibit 3 ("Dalia Auditors' Report") at 0342 (listing SMEE as part owner of Dalia and indicating that SMEE is "under the major guidance of Mr. Jamal Radwan" and that the ownership of SMEE includes Radwan's family). Radwan has not denied that he either owns or controls SMEE.

There is further reason to doubt that all the information sought from Radwan would fall within the protected realm of "commercial secrets" which he might have learned only through a banking or agency relationship with SMEE. For example, some of the information regarding SMEE's involvement with the SEIC capital notes (*see* Question 3, *supra* at 31), in particular the assignment of AIC's capital note to SMEE, *see* Plaintiff's Response, Exhibit 3 at X017427, would have been available to Radwan as the Managing Director of AIC. Both parties' experts appear to agree that even if SMEE is entitled to the protection of Swiss secrecy laws, Radwan is not prohibited from disclosing information about SMEE which he did not obtain by virtue of a banking or agency relationship with SMEE. *See* Weber–Caflisch Opinion at 2 (obligation is to keep confidential "the facts learned during the banking activity"); Treuillaud Supplemental Opinion at 3 (Radwan has obligation to keep secrets if he was employee or agent of company holding protected information "and if the information in question was transmitted to him by reason of

these functions."); Cassani Opinion at 9–10 (discussing various capacities in which Radwan claims to have received information about SMEE).

### b. *Dalia*

There is absolutely no evidence to support Me. Weber–Caflisch's statement that Radwan was the banker for Dalia. Radwan has not asserted such a relationship in either his deposition or affidavit accompanying this motion.[9] Nor is there any evidence to support Me. Treuillaud's assumption that Dalia, a Panamanian corporation, is effectively managed and operated in or from Switzerland.[10] Accordingly, there is no basis upon which to conclude that Dalia is protected in any way by Swiss secrecy law.

In any event, the sole question concerning Dalia which Radwan refused to answer concerned the identity of the fund manager who approached him, presumably in his capacity as director of either SEIC or AIC, about the purchase by Dalia of SEIC shares. *See* Question 7, *supra* at 31. Despite his objection, Mr. Radwan did, in fact, testify at his deposition that he did not remember this fund manager's name and that a review of corporate documents did not reveal it. *See* Dep.Tr. at 220. This question therefore appears to have been answered.

### c. *AIC and AIC Gerance*

Radwan's relationship with AIC is known: Radwan was formerly the managing director of AIC. He appeared at the deposition which gave rise to the instant motion as the designated representative of AIC. What is not known is the relationship between AIC

---

8. Radwan has asserted that his relationship with all of the companies in issue is governed by agency powers or mandate agreements controlled by Swiss law. He has not produced any written agency or mandate agreements nor provided any details regarding the scope or terms of such agreements.

9. It appears that Me. Weber–Caflisch simply repeated verbatim the paragraph regarding Radwan's banking relationship with SMEE in regard to each of the other companies at issue. *See* Weber–Caflisch Opinion at 9, 11–12. Given the lack of evidence, or even allegations, that Radwan had a banking relationship with any of these

companies other than SMEE, Me. Weber–Caflisch's "cookie-cutter" analysis regarding Radwan's secrecy obligations in relation to Dalia, AIC and SIIC is of little value.

10. The fact that Me. Treuillaud's factual statements are assumptions, rather than assertions of fact based on personal knowledge, was explicitly stated in his Supplemental Opinion, which began with the disclaimer that his knowledge of the facts of this case come only from the letters and documents sent to him by Radwan's United States counsel and that he is in no position to give an opinion as to their reality.

and "AIC Gerance." All that has been presented on this issue is Radwan's deposition testimony that "gerance" means managed, management or trust, see Dep.Tr. at 36, and that "AIC Gerance" was "a structure in Switzerland that AIC N.V. dealt with." See Dep. Tr. at 285.

Whatever the relationship between AIC and AIC Gerance may be, Radwan once again has neither explained nor demonstrated why the information sought regarding both AIC and AIC Gerance may not be disclosed. The identities of those who attended an AIC shareholders' meeting (see Question 9, supra at 31) cannot be confidential simply because the meeting took place in Switzerland. Not all business events and activities which happen to take place in Switzerland are cloaked in a shroud of secrecy. If this information is confidential, it must be because either a shareholder or AIC has a legitimate basis under Swiss law to prevent its disclosure. There is simply no evidence, nor even allegation, that any of AIC's shareholders are Swiss domiciliaries whose identities might be protected. Nor is there any evidence that AIC, a Netherlands Antilles corporation, is effectively managed and operated in or from Switzerland so that it might be protected by Swiss law as interpreted by Radwan's own experts.

As to who benefitted from the sale of SEIC shares held by AIC Gerance, Radwan testified at his deposition that at the time of the sales a record or blotter would have been kept which would have reflected who owned the gerance shares and how much money the owners received when the shares were sold. See Dep.Tr. at 676–77. This record would have been AIC's record. Id. at 676. This blotter now appears to be missing. While the non-production of this record is a source of contention between the parties,[11] in this context it is sufficient to note that the blotter falls within the scope of both Plaintiffs' Request for Production, served on March 20, 1992, and the terms of the Court's December Order which required AIC to produce "such discrete documents files and/or compilations

as would reflect the use(s) and/or disposition(s) of the proceeds of sale of the 1984 stock offering by SEIC, regardless of the year in which such use or disposition was made." See December Order, ¶ 2. No Swiss secrecy objection has ever been made to production of such documents or the December Order. If the revelation of this information through a document in AIC's possession is not protected, it follows that its revelation through a representative of AIC with knowledge is not protected. Radwan would therefore not face penalties for disclosure of this information.

### d. SIIC

No evidence has been presented, nor explicit allegation made, that SIIC, a Panamanian corporation which was a shareholder in AIC, is effectively managed and operated in or from Switzerland so that it might be entitled, as argued by Radwan's experts, to the protection of Swiss secrecy law. Plaintiffs seek the identity of the fiduciary in whose possession the SIIC articles of incorporation were last seen. Radwan testified that the fiduciary who last held SIIC's articles of incorporation was Swiss. See Dep.Tr. at 602. No explanation has been offered how or why his identity might possibly qualify as a "commercial secret" protected by Swiss law.

In sum, even were I to adopt completely the views of Radwan's experts regarding the scope of Swiss law, Radwan would still have failed to carry his burden of demonstrating the applicability of those laws to the specific information sought. Consequently, I cannot conclude either that Switzerland has a strong national interest in preventing the discovery at issue, see supra at 35, or that Radwan faces a serious threat of hardship should he be required to provide plaintiffs the information they seek.

Finally, there is no escaping the fact that Radwan, SEIC and AIC are primary defendants in this action. While some courts have been hesitant to require a non-party witness, who is an innocent source of information and a stranger to the litigation, to be forced to

---

11. The issue of the AIC Gerance blotter and other missing documents will be addressed sepa-

rately at a conference with the parties.

undergo hardship for the sake of discovery, any potential hardship faced by a primary defendant in litigation may be weighed less heavily by the court. *See Minpeco,* 116 F.R.D. at 526–27.

### 3. Importance of Information Sought

It is conceded that the information sought is relevant to the plaintiffs' claim regarding the diversion of proceeds from the 1984 SEIC offering. *See* Jewell Letter at 10. Defendant suggests, however, that the information is "remote from the main issues." *Id.* I do not agree. One of plaintiffs' primary claims is that Radwan diverted the proceeds of the 1984 SEIC offering through companies within his ownership or control and for the benefit of himself and others of his choosing. As the Court's December Order made clear, the management and ownership of the entities appearing on SEIC's Share Ledger, and their involvement in the various transactions listed there, are directly relevant to plaintiffs' case. Defendants did not appeal that Order.

Further, Radwan has not obtained waivers of confidentiality from any of the parties about whom plaintiffs seek information. Accordingly, unlike the situation in *Minpeco,* 116 F.R.D. at 529, this is not a case in which it can be said that the discovery plaintiffs seek has reduced importance in light of other discovery provided pursuant to waivers.

Finally, the importance of Mr. Radwan's testimony on the subjects at issue is greatly increased by the fact that he may prove to be the only source of much of this information. Documents which might provide some of the information sought at Radwan's deposition, and whose production was required by the Court's December Order, are now claimed by defendants to be missing. One such document is the AIC blotter referred to *supra* at 38. Also missing are SEIC's financial journals and ledgers for the years 1979 to 1986. The claimed disappearance of these documents makes Radwan's testimony that much

more critical to plaintiffs' ability to obtain full discovery.

### 4. Defendants' Good Faith

Plaintiffs contend that Mr. Radwan has acted in bad faith in interposing Swiss secrecy objections to discovery. Plaintiffs refer to what they consider to be a long pattern of obstruction and bad faith by Radwan in the conduct of discovery. In addition to the missing documents discussed above, plaintiffs also point out that Radwan's secrecy objection was raised in an untimely fashion, after other objections to the 30(b)(6) Notices had been argued and overruled.[12] Plaintiffs argue that Swiss secrecy laws are in no way implicated here because none of the companies are Swiss, none of the information sought qualifies as commercial or business secrets, and none of the disclosures will take place in Switzerland. Finally, plaintiffs note that in a Request for Production served on March 20, 1992, SEIC, AIC and Radwan were asked to produce documents bearing on many of the same issues which were objected to at the deposition and no objection was made on the grounds of Swiss secrecy. In fact, SEIC produced the Dalia Auditors' Report which indicated that Radwan and his family owned and controlled SMEE. Yet, at the deposition, Radwan refused to answer questions regarding the ownership of SMEE. *Cf. Nakash v. U.S. Dept. of Justice,* 128 F.R.D. 32, 35 (S.D.N.Y.1989) ("[i]t is difficult to reconcile movant's privilege arguments with their previous revelations of the underlying facts").

As evidence of good faith, Mr. Radwan points out his "prudent decision to consult with Swiss counsel, his actions in reliance on such advice and his attempts, although unsuccessful, to secure waivers of secrecy rights from the parties involved . . .". Jewell Letter at 9–10; Radwan Decl. at ¶¶ 5–9. Radwan also suggests that the volume of discovery already produced is indicative of

---

12. Plaintiffs argue that the Swiss secrecy objection has been waived because it was not raised earlier, or, in the alternative, that the propriety of the 30(b)(6) Notices is now *res judicata. See* Plaintiffs' Memorandum of Authorities at 2–4. While I consider the delay in interposing this objection to be relevant to defendant's good faith, in light of my conclusion that Radwan has failed to demonstrate good cause for the issuance of a protective order, I need not resolve the issue of waiver or *res judicata.*

his good faith participation in the discovery process. Jewell Letter at 10.

Mr. Radwan's decision to consult with Swiss counsel about his Swiss secrecy obligations the week before his deposition is hardly evidence of good faith. Radwan has long been aware of the existence of Swiss secrecy laws, *see* Dep.Tr. at 555–56, and has been aware of the subjects to be covered at this deposition since October 1992. He has been represented by counsel in this case since its inception. While I am not prepared to conclude that his raising of this issue at the deposition was "bad faith", the eleventh-hour timing of the objection and the inability of United States counsel to support the objection when raised, other than by reference to his client's claims of consultation with another attorney, is troubling.

Mr. Radwan's attempt to secure secrecy waivers, if genuine, is indeed evidence of good faith. Mr. Radwan claims that, in light of the fact that all of the confidentiality requirements at issue may be waived by consent of the "owners" of the protected information, he sought consent from the management of SMEE and Dalia, the Swiss fiduciary of AIC, and the Swiss fiduciary of SIIC, to his providing the information sought by plaintiffs, but that he was denied consent. *See* Radwan Decl. ¶ 10(a–d). Nevertheless, no company or person (or representative acting on its behalf) has submitted an affidavit indicating that its interests are threatened by disclosure of this information or that it does not consent to its disclosure. There is some evidence, however, that Mr. Radwan either owns or manages some or all of the companies at issue, *see, e.g.*, Dalia Auditors' Report, and he has not denied that fact. Thus, he may himself be able to consent to the disclosure of all, or at least part, of the information the plaintiffs seek. *See* Cassani Opinion at 7. Compounding these circumstances is the fact that, unlike the defendant in *Minpeco*, 116 F.R.D. at 527, Radwan has not submitted a categorical affirmation that no information regarding his own activities or ownership interests is being withheld on the grounds of Swiss secrecy. In light of these facts, there is reason to believe that Radwan may be protecting his own interests, not others, by invocation of the Swiss secrecy laws. *See Roberts v. Heim*, 130 F.R.D. at 436 (where defendant did not deny plaintiffs' allegation that he owned or controlled the corporations as whose representative he was to testify and no affidavits were submitted by entities or individuals protesting that the requested discovery would harm their interests, court commented that defendant had made no showing that he was protecting any interests but his own and denied application for protective order).

I consider the above evidence of good or bad faith inconclusive. In the end, however, it is Mr. Radwan who has the burden of proving his clear entitlement to a protective order. Mr. Radwan is an American citizen living in France. None of the companies he was asked about or on whose behalf he appeared to testify are Swiss. These companies appear to have had interlocking ownership interests and Mr. Radwan appears to have owned or managed many, if not all of them. There has been no evidence that the beneficial owners of these companies are Swiss. Although he was given the benefit of the doubt at his deposition, having had additional time to support his assertion of secrecy he has submitted equivocal and unconvincing evidence that he is entitled to the protection of Swiss secrecy laws, that Switzerland has a substantial interest in preventing the disclosure of the evidence sought, or that he will face real hardship if the information is disclosed. Balanced against that is the relevance of the information sought, the strong United States' interest in the enforcement of its securities and racketeering laws and the existence of a confidentiality order which limits the dissemination of the information and decreases the likelihood of injury to Mr. Radwan because of his disclosures. Accordingly, I conclude that a protective order should not be issued in this case.

CONCLUSION

For the foregoing reasons, defendant Jamal Radwan's motion for a protective order is denied.

Plaintiffs' request for sanctions stemming from defendant Radwan's invocation of Swiss secrecy laws is denied.